(59 Misc. Rep. 298.)

MARTIN et al. v. ANDREWS et al.

(Supreme Court, Special Term, Dutchess County.   May 9, 1908.)

1. WILLS—CONSTRUCTION.

A will, after certain specific bequests, gave the executors power to sell the remainder of decedent's real and personal estate, or so much thereof as was necessary to enable them to pay all special bequests and expenses and carry out the directions of the will. After payment of all legacies, debts, and expenses, over $1,000,000 of personal property would remain in the hands of the executors to go to the residuary legatees without selling the real estate. The residuary legatees objected to sale of the real estate by the executors, who claimed the right under the will to sell it, and who asserted that right because it would give them commissions of $8,000 for making the sale. There was nothing in the will showing an intention on the part of the testator that his real estate should be sold to relieve his personal estate from the payment of his debts, legacies, and the expenses of administration; but, on the contrary, the legacies greatly exceeded the value of the real estate which he devised to his residuary legatees, and could not have been paid out of the proceeds of the sale of such realty. *Held*, that the will did not authorize the executors to sell the realty over objections of the residuary legatees, and authorized them to sell only such personal property as was necessary to pay the expenses and carry out the directions of the will.

2. SAME.

Before the personal estate of a decedent is relieved from the payment of debts, legacies, and expenses of administration, it must clearly appear that the testator intended that it should be.

3. SAME—POWER OF SALE—RIGHT OF RESIDUARY LEGATEES TO DEFEAT.

Though the power of sale given to executors by a will is mandatory, the residuary devisees have a right to take the realty as such and to de-

feat the power of sale, where they are exclusively entitled to the fund which may arise from the sale.

4. EXECUTORS AND ADMINISTRATORS—COMPENSATION—RIGHT TO—ELECTION MADE BY LEGATEES—EFFECT.

Where residuary legatees elect to take securities left them by a decedent, instead of the proceeds received from their sale by the executors, and file notice of such election in the surrogate's office, as required by law, delivering duplicates of the notice to the executors, the executors are entitled to their commissions on the securities the same as though they had sold them.

5. WILLS—POWERS OF SALE.

Executors have only an administrative title to the personal estate and as a mere aid to pass the property to the persons named in the will as entitled thereto after the payment of the debts and expenses of administration, and the persons beneficially entitled to the personal property may elect to take it in specie after the payment of debts and expenses.

6. EXECUTORS AND ADMINISTRATORS—DUTY OF EXECUTORS.

It is a breach of trust for executors to do that which will diminish the value of property committed to their care, and it is the imperative duty of every court to scrutinize their management of trust property and hold them personally responsible for any loss which may result from their misconduct, mismanagement, or want of reasonable care and prudence in the discharge of their duties.

Action by Mary Justina de Peyster Martin and others against Joseph Andrews and others to obtain construction of the will of John Watts de Peyster, deceased. Will construed.

Action for a construction of the will and for an injunction restraining the defendant executors from selling real estate and from selling securities, except so much thereof as may be necessary to pay debts, legacies, and expenses of administration.

The testator, John Watts de Peyster, died May 4, 1907, leaving a last will and testament, which was duly probated in the Surrogate's Court of Dutchess county on the 13th day of May, 1907. He died seised of real estate of the value of about $260,000 and personal property in securities amounting in value to over $2,000,000. He bequeathed to various persons and corporations legacies amounting, in the aggregate, to about $380,000. By the residuary clause in his will he devised to his three granddaughters, Esther Estelle de Peyster Hosmer, Mary Justina de Peyster Martin, and Carola Anna de Peyster Kip, all of the rest, residue, and remainder of his estate, both real and personal. Testator's will contained the following power of sale: "I hereby confer full power of authority upon my hereinafter named executors, the survivors or survivor of them or whomsoever of them as shall qualify as such, to sell and convey at public or private sale, or mortgage or lease, as soon as they can do so to advantage after my decease, all my real and personal estate or so much thereof (except such real or personal property as is herein specifically devised) as may be necessary to enable them to pay as promptly as possible all the special bequests mentioned in, and obtain means to pay expenses and carry out the directions of this my last will and testament. And, furthermore, it is my will that my executors hereinafter named or the survivors or survivor of them, shall use their own judgment and discretion in the selling, leasing, deeding and conveying my property, personalty and realty, by covenant against grantor deeds, excepting such property as I have herein specifically bequeathed or devised, after the payment by my executors of all bequests and legacies herein specified, and after the payment of the expenses necessarily incident to the settlement of my estate, to become a part of my residuary estate." The executors, Joseph Andrews, Robert Watts, Jr., and Augustus de Peyster, claim that under this power of sale they have the right to sell all of the real estate of which testator died seised and all of the securities and other personal property, and out of the gross sum realized from the sale of such real and personal property it is their

duty to pay the legacies, debts, and expenses of administration and turn the balance, in cash, over to the residuary legatees.

On November 14, 1907, the residuary devisees caused a notice in writing to be served on the executors to the effect that they, the residuary devisees, elected to take the real estate, as real estate, free and discharged from all powers of sale that the executors had under the will of said deceased. The residuary legatees also notified the executors in writing that they had elected to take in specie all of the personal estate and securities remaining in the hands of the executors after the payment of all legacies, debts, and expenses of administration, and filed in the surrogate's office of Dutchess county a notice to this effect, as required by section 2744 of the Code. John Hackett, the attorney for the plaintiff residuary legatees and devisees, alleges that the executors have no right to sell the real estate until the personal estate is first exhausted in the payment of debts, legacies, and expenses of administration, and he also asserts that it is the plain intention of the testator that the securities belonging to the estate, after the payment of debts, legacies, and expenses of administration, should be turned over to the residuary legatees in specie.

John Hackett, for plaintiffs.

Walter I. McCoy, for defendants Joseph Andrews, Robert Watts, Jr., and Augustus de Peyster, as executors.

John M. Hackett, for defendants Marietta West and others.

C. P. Dorland, guardian ad litem for defendant Carola de Peyster Kip.

W. T. Emmet, for defendant New York Life Insurance & Trust Co.

Harris & Towne, for defendant New York Historical Society.

Turner, Rolston & Horan, for defendant Farmers' Loan & Trust Co.

Merrill & Rogers, for defendant Colored Orphan Asylum.

Frederic de P. Foster, for defendant New York Dispensary.

John Mason Knox, for trustees of the Leake & Watts Orphan House.

James L. Williams, for defendants John W. de P. Toler and Minnie B. Toler.

Charles L. McCann, guardian ad litem for defendant John Toler.

John E. Mack, for defendants Winifred Noone and others.

MORSCHAUSER, J. This action is brought by the residuary legatees to obtain a construction of the last will and testament of their grandfather, Gen. John Watts de Peyster, deceased, and the questions presented to the court for determination are:

First. Have the corporations named in testator's will, all of which are defendants herein, the legal right to take and hold the legacies and devise given to them respectively in the will?

It appears from the evidence that each of said corporations has been organized under and in conformity with the laws of this state, that each of them is authorized by law to take real and personal property devised to it, and that each of them has the legal right to take and hold the legacies and devise given them respectively in this will. The legacies and devise are valid and should be paid to said corporations by the executors.

Second. The next inquiry relates to the trust created by item 14 of said will, which item this court is asked to interpret and advise said

executors in relation to the stock to be purchased for said trust, by whom it shall be purchased, and whether it shall be purchased at the market value, if such value is below or above par.

It seems quite clear from the language of the will that the testator intended that his executors should take from his estate the sum of $100,000 in cash, deduct from that sum the transfer tax thereon, and with the balance purchase as much dividend paying railway first preferred stock as they may be able to obtain for that sum at the market value thereof, either above or below par, and that the stock so purchased by said executors shall be delivered by them to the defendant the New York Life Insurance & Trust Company to constitute the corpus of the trust created in and by said item 14 of said will.

The last question relates to the authority given by the testator to his executors in regard to the sale by them of his real and personal estate.

The executors admit that, after all legacies and debts and expenses are paid, there will be, at least, $1,000,000 of personal property left in their hands to go to the residuary legatees without selling the real estate. Why, then, should the executors insist upon selling the real estate against the protests of testator's granddaughters, to whom he expressly devised it in and by the residuary clause of his will? Upon the trial of this action the learned counsel for the executors admitted on the argument that the reason why the executors desired to sell the real estate was to obtain commissions on the proceeds thereof, and that they believed the interests of the persons interested in the estate would be promoted if the executors were allowed to sell it. Inasmuch as the residuary devisees protest against the sale, by the executors, of this real estate, it is quite evident why they decline to permit a transaction in which they would lose and the executors gain about $8,000. In his will the testator says that he has lost $2,000,000 through acting on unfortunate legal and financial advice. Having this knowledge, it may explain the reason why his granddaughters decline the offer of the executors. As these devisees are the only persons to be injured by a sale of the real estate against their objections—a sale sought to be made for no other purpose than to pay the executors about $8,000 commissions out of the proceeds thereof—the legal right of the executors to do so must be very clear, or it cannot receive the sanction of a court of equity.

The executors claim that the will confers upon them the unqualified power to sell all of the real and personal estate of the testator. The will gives them no such power or authority. On the contrary, their authority to sell the real and personal estate depends, first, upon the necessity for the sale thereof, and, second, the amount to be sold is only so much as may be necessary to pay legacies, debts, and expenses of the administration of the estate. The wisdom of this limitation to the power of the executors to sell the property of the testator is disclosed by the fact that, when he was about to make his will, he considered with great care the amount and value of the different parcels which constituted his real estate. These appear to have been worth about $260,000. The securities which made up his personal estate, and the aggregate value thereof, at that time, exceeded $2,000,000.

The care he exhibited in keeping his money securely invested in what may well be considered the safest securities to be had, and his desire to have all his money, or nearly all of it, drawing interest, is shown by the fact that there was not to exceed $12,000 uninvested and on deposit in bank. According to the evidence, all the foregoing matters were considered by him at the time he made his will. He was an aged man with his mental faculties well preserved. His nearest relatives were his three granddaughters, for whom he had great affection, and one grandson. When he sat down to write the instrument which was to pass to his descendants what remained of the large property he had inherited from his ancestors or accumulated himself, he realized that real estate in the city of New York would be a valuable asset to give his three granddaughters, especially in view of the large personal estate they were to receive by his will. The only parcel of real estate that he gave to any one outside of his family was the Engine House at Madalin. This he specifically devised to the trustees of the Leake & Watts Orphan House in the city of New York. His Helensdale farm he devised to his granddaughter Mrs. Martin. He then expressly devised all the rest, residue, and remainder of his real estate to his three granddaughters, knowing, as he did, the amount and extent of his personal estate and the amount of the legacies he had given, which did not exceed the sum of $380,000, and that the debts, legacies, and expenses of administration would have to be paid out of his personal property before his real estate could be resorted to for that purpose. It is clear that (under the will) he did not intend to give his executors the power to sell his real estate unless his personal estate proved insufficient for that purpose. No reason can be found in the will to lead one to believe that the testator intended that his executors should depart from the ordinary rule of marshaling assets for the payment of debts, legacies, and expenses of administration. The law is well settled that, before the personal estate is relieved from the payment of debts, legacies, and the expenses of settling the estate, it must clearly appear that the testator intended that it should be. There is nothing in testator's will to show that he intended that his real estate should be sold to relieve his personal estate from the payment of his debts and legacies and the expenses of the administration of his estate. On the contrary, it is evident that he would not have devised the rest, residue, and remainder of his real estate to his granddaughters if he intended that it should be used to pay his legacies, which exceeded the value of his real estate by at least $100,000.

Th devisees, being of full age and competent, caused to be served upon defendant executors, before the commencement of this action, a notice that they elected to take the real estate in its unconverted form. Notwithstanding such election, the executors claim the right to sell the real estate. Even if the power of sale was mandatory, the residuary devisees have the right to take the real estate as such, and to defeat the power of sale.

In McDonald v. O'Hara, 144 N. Y. 568, 39 N. E. 643, Mr. Justice Haight says:

"We are inclined to the view that there is no escape from the conclusion that the direction to sell embraced in the will is imperative, and that it

operates to convert the realty into personalty. Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498. It is, however, well settled that the persons who are exclusively entitled to the fund arising from the sale may, if they so elect, prior to the actual sale, take the real estate in its unconverted form." Mellen v. Mellen, 139 N. Y. 210–220, 34 N. E. 925; Trask v. Sturges, 170 N. Y. 482, 63 N. E. 534; Steinhardt v. Cunningham, 130 N. Y. 292, 29 N. E. 100; Prentice v. Janssen, 79 N. Y. 478; Taber v. Willets, 1 App. Div. 287–289, 37 N. Y. Supp. 233.

The executors also contend that they have the right to convert into money all of the securities and property composing the testator's personal estate. This contention is in direct conflict with the plain language of the will, which expressly authorizes the executors to sell so much of testator's real and personal estate as may be necessary to pay the bequests, expenses, and carry out the directions of his will. The residue of his personal estate he bequeathed to his three granddaughters. Why should he desire the valuable securities that he had selected with great care and prudence, and in which he had invested his money, and which constitute the bulk of his residuary estate, to be sold by his executors, instead of turning them over to his granddaughters as a part of his residuary estate? Testator says in his will that his financial experience had been very costly to him. With this in mind, did he intend that the securities which he had selected with care and foresight, that he had acquired through years of experience in financial affairs, should be converted into money by his executors, and the proceeds thereof, amounting in value to over $1,000,000, turned over to his granddaughters? Did he believe that they would deposit this large amount of money in a bank and keep it there? Did he intend they should do this? Or did he believe that they could invest the money in safer or better securities than he had invested it? No one can believe that this grandfather intended that the carefully selected securities which constitute his residuary estate should be sold and the proceeds given to his granddaughters. He intended that the securities which constitute in whole or in part the rest, residue, and remainder of his personal estate should not be sold by his executors. He did not intend to give his executors power to sell such securities, and it is their duty to turn over to the three granddaughters of testator these securities, as part of the residuary estate of said deceased. The executors will suffer no loss by doing this, because they will receive their commissions thereon, as the residuary legatees have elected to take said securities under section 2744 of the Code of Civil Procedure, and have filed notice of such election in the surrogate's office of Dutchess county, N. Y., as provided by said section, and have delivered to said executors duplicates of said notice.

It is well settled that the executors have only an administrative title to the personal estate, and as a mere aid to pass the property to the persons named in the will as entitled thereto after the payment of the debts and expenses of administration, and the persons beneficially entitled to the personal property may elect to take it in specie after the payment of the debts and expenses. This is most aptly enunciated by Mr. Justice Jenks, in Lane v. Albertson, 78 App. Div. 607, at page 614, 79 N. Y. Supp. 947, at page 951, as follows:

"Further, the sole residuary legatee, an adult who takes the residue free from subjection to life estate or other charge, protests against the sale, and prays to take the stock, which seems a valuable investment, in specie. So far as the will is concerned, their being neither direction nor necessity for conversion, no trust created, and none in interest save this legatee, her prayer should prevail. The title of the personalty is in the executors; but, in the language of Landon, J., in Steinway v. Steinway, 163 N. Y. 183–200, 57 N. E. 312, 317, it is 'an administrative title such as executors usually have to personal property of their testator, for the purpose of administration, good against all the world except the beneficiaries, but as to them a mere aid and instrument to pass it forward to them in the due course of administration, as the law and the will appoint, free and clear of further needs or liens of the estate.' See, too, Blood v. Kane, 130 N. Y. 514, 519, 29 N. E. 994, 15 L. R. A. 490; Thomson v. Hill, 87 Hun, 111, 114, 33 N. Y. Supp. 810, affirmed 155 N. Y. 677, 49 N. E. 1104. Now that the debts are paid, the executors are mere trustees, charged with the duty to collect, convert, and distribute. When this is done, their trust ceases. Ledyard v. Bull, 119 N. Y. 62, 23 N. E. 444. It does not appear there is aught to collect, or that there is necessity to convert. All that remains, then, is to distribute the residue to the sole legatee. Though the title of the executors does not pass until the settlement of their accounts, that is but the formal relinquishment which may be required of them by the courts."

It is a very serious breach of trust, and a clear violation of law, for executors or trustees to do that which will diminish the value of the property committed to their care; and it is the imperative duty of every court to scrutinize their management of trust property and hold them personally responsible for any loss which may result from their misconduct, mismanagement, or want of reasonable care and prudence in the discharge of their duties.

Judgment accordingly.