CENTRAL TRUST COMPANY OF NEW YORK, as Executor of and Trustee under the Will of GEORGE W. EGLESTON, Deceased, Respondent, *v.* AMY D. EGLESTON et al., Appellants, and WILLIAM C. EGLESTON et al., Respondents, Impleaded with Others.

1. WILLS — RULE FOR INTERPRETATION AND CONSTRUCTION OF AMBIGUOUS AND INDEFINITE PROVISIONS. In the construction of wills having ambiguous or indefinite testamentary provisions, the inquiry in each case must be what provision has the testator intended to make for the disposition of his estate; and not whether he intended to dispose of his estate according to the statutory rules governing testamentary dispositions; when the provisions are understood and the intent of the testator ascertained, then it is for the court to determine whether such intended provisions are valid or otherwise, and it is the duty of the court to interpret the will as made, not to construct a new will.

2. WILLS — WHEN WILL IS INVALID BECAUSE IT SEEKS TO CREATE TRUST IN VIOLATION OF STATUTE AGAINST PERPETUITIES. Where it is manifest from the analysis of a holographic will that it was the purpose of the testator to perpetuate his estate and to tie up the corpus thereof in one indivisible trust to endure for the three lives of his sons, contrary to the provisions of the statute against perpetuities, which limits the sus-

pension of the absolute ownership of property to two lives in being at the testator's death, the trust is invalid and, in the absence of any direction for the ultimate disposition of the corpus of the estate, the whole will must fail and the estate of the deceased must be divided among the widow and the three sons of testator in the statutory proportions provided in the case of intestacy, namely, one-third thereof to the widow and to each son two-ninths thereof.

3. ANNUITY — WHEN PART OF INVALID TRUST SCHEME MUST FALL WITH IT — WHEN CLAIM UNDER ALLEGED ANTE-NUPTIAL CONTRACT CANNOT BE CONSIDERED IN ACTION FOR CONSTRUCTION OF A WILL. Where such will provided, as part of the trust scheme, an annuity for testator's widow, purporting to set aside a certain sum as a marriage settlement, the annuity falls with the failure of the trust; the widow's claim of a right to enforce the ante-nuptial contract cannot be considered, however, in an action for the construction of the will, especially where the trial court has found that, at the time of testator's death, there was no specific property, real or personal, to any amount, which had been set aside as a marriage settlement.

*Central Trust Co.* v. *Egleston,* 110 App. Div. 893, reversed.

(Argued April 5, 1906; decided April 24, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 13, 1906, which affirmed a judgment of Special Term in an action for the construction of the will of George W. Egleston, deceased.

This action was brought in order that the will of George W. Egleston might be judicially construed. The testator, a resident of this state, died in England, in 1904, and the instrument is in his own handwriting. He left an estate of considerable size, which is disposed of, wholly, among his widow and three sons. The will, after directions for the disposition of the testator's body, commences with this provision: " I appoint the Central Trust Company of New York City (now at 54 Wall St.) to be my trustee and my administrators under this will, committing the family interests to their kind care and supervision." Then are given some instructions concerning securities and the will continues: " My brother William C. Egleston having signified his intention of benefiting my sons in his will I have thought it advisable to place all prop-

erty in Trust for my sons, so that it may pass on to my grand-children.   My most earnest desire is to perpetuate the name, which it is trusted may be for a good name in all generations." Certain instructions and directions follow, which relate to guardianships for the minority of his children and to advances pending adjustment of "family affairs," and the testator proceeds : " In the event of the death of my wife, and my children without issue, I bequeath to my brothers, or brother equally : if they are not alive, to the children or children's children of my late sister Sarah Elizabeth Lanier of New York City, to be used by them for life and still deeded on to their children." In the following paragraphs are found the dispositions of his estate, made in favor of his wife and three sons, as to which construction is asked, that their meaning and effect may be adjudged.   "I give and bequeath to my wife Amy Dorinda Egleston, so long as she remains my widow — for the first year, or year and one-half as explained after, while the estate is provided for, Two thousand dollars per annum, and when the estate is settled after the above time Four thousand dollars each year for life, this to include all due on the annuity for life, if unmarried, of Four thousand pounds, but if she prefers the annuity or marriage settlement only then as much more as will make the whole Four thousand dollars per annum.

"I give and bequeath to my sons Thomas Buchanan Mac-Lean Egleston — Harold Paterson MacLean Egleston — Vivian Hector MacLean Egleston during the year of one, or one and a half years during settlement, the sum of two thousand dollars each at least one hundred pounds going with their mother to maintain the home if called for.   After that I give to each of my sons an income of three thousand dollars per year for education and expenses, but two hundred pounds shall be passed over for the maintenance of the home, without which the income will remain two thousand dollars instead of three thousand dollars ($3,000).   Any sums of this amount not drawn to go to their credit at the Trust Company separately.

"At the age of twenty-five years (25) when each child shall reach that age; not before, or when the three children are twenty-

five or the youngest twenty-five years old — I donate and give to the three sons Thomas, Harold and Vivian seventy-five per cent. of the income of the estate after payments to my wife and deductions for charges — the balance of twenty-five per centum of the net income being held and invested, until each child has arrived at the age of thirty years of age (30) when I bequeath to them after all deductions ninety-eight per cent. (98%) of the net income — the balance of two per cent. keeping the estate in heart and to be invested.   My son Vivian Hector MacLean to attain the age of twenty-five, and thirty years, before the divisions, making my two eldest boys several years older.

"But so as to make some provision for my sons Thomas and Harold, waiting for their brother to reach the ages of 'twenty-five' and 'thirty years'— I give to Thomas and Harold five hundred dollars each extra from the time they arrive at twenty-five years old till Vivian arrives at the same when all shall have as usual till they come to thirty years of age, when I give the same five hundred dollars a year to each till Vivian arrives at thirty years when they share alike." No further provisions of the instrument need be recited, as bearing in any way upon the attempted testamentary disposition of the estate.   At the Special Term it was adjudged, in effect, that three valid trusts were created for the sons, subject to the annuity for the testator's widow during her widowhood ; that the income of each son's share should contribute to the payment of the widow's annuity ; that the accumulation of income from each son's share beyond his minority was void and should cease upon attaining his majority, and that the testator, not having disposed of the corpus of the estate, died intestate as to the same and the remainders attendant upon the termination of the trust estates, vested in interest, one-third in Mrs. Egleston and one-third of two-thirds, or two-ninths, in each of the three sons, subject to the provisions for the annuity and the beneficial trust interests.   The Appellate Division, in the first department, affirmed the judgment of the Special Term and the widow, an adult son and the guardian for the infant sons, appeal to this court.

*Lucius H. Beers* and *Herbert C. Lakin* for Amy D. Egleston, appellant. Mrs. Egleston has the right to elect to enforce the marriage contract. (*Hogan* v. *Curtin*, 88 N. Y. 162.) The attempted trust for the testator's three sons is invalid. (*Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86; *Locke* v. *F. L. & T. Co.*, 140 N. Y. 135.) The provision for Mrs. Egleston's annuity is valid and must stand, in spite of the invalidity of the provisions for the testator's sons. (*Underwood* v. *Curtis*, 127 N. Y. 523; *Oxley* v. *Lane*, 35 N. Y. 349; *Van Schuyver* v. *Mulford*, 59 N. Y. 426; *Kennedy* v. *Hoy*, 105 N. Y. 134; *Savage* v. *Burnham*, 17 N. Y. 562; *Mansbach* v. *New*, 58 App. Div. 191; 170 N. Y. 585; *U. T. Co.* v. *Metcalfe*, 37 Misc. Rep. 672; *Kalish* v. *Kalish*, 166 N. Y. 368; *Matter of Trotter*, 104 App. Div. 188; 182 N. Y. 465.) Subject to the annuity for Mrs. Egleston, the entire estate passes to the widow and next of kin. (*Haxtun* v. *Corse*, 2 Barb. Ch. 506; *Cottman* v. *Grace*, 112 N. Y. 299; *Savage* v. *Burham*, 17 N. Y. 562; *Sanford* v. *Goodell*, 82 Hun, 369; *Walker* v. *Taylor*, 15 App. Div. 452; *Pickering* v. *Lord Stamford*, 3 Ves. 332, 492; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Matter of Benson*, 96 N. Y. 499; *Matter of Hodgman*, 140 N. Y. 421; *Vernon* v. *Vernon*, 53 N. Y. 351; *Lefevre* v. *Lefevre*, 59 N. Y. 434.)

*E. B. Smith* and *Daniel Nason* for Thomas B. M. Egleston, appellant. The provisions in the testator's will for the benefit of the widow and children constitute one general trust scheme and are inseparable. (*Morse* v. *Morse*, 85 N. Y. 53; *Ward* v. *Ward*, 105 N. Y. 68; *McSorley* v. *Wilson*, 4 Sandf. Ch. 515; *Cochrane* v. *Schell*, 140 N. Y. 531; *Herzog* v. *Title Co.*, 177 N. Y. 95.) The trust scheme is void. (*Hillyer* v. *Vandewater*, 31 N. Y. S. R. 671; *Herzog* v. *T. G. T. Co.*, 177 N. Y. 91; *Goebel* v. *Wolf*, 113 N. Y. 412; *Marks* v. *Halligan*, 61 App. Div. 179; *Kiah* v. *Grenier*, 56 N. Y. 220; *Riker* v. *Leo*, 115 N. Y. 93; *Phillips* v. *Phillips*, 112 N. Y. 197; *Schult* v. *Moll*, 132 N. Y. 122; *McSorley* v. *Wilson*, 4 Sandf. Ch. 515; *Cochrane* v. *Schell*, 140 N. Y. 531.)

*Albert Stickney* for Harold P. M. Egleston et al., appellants. Subject to the annuity to the widow, the will must be held to have created three separate trusts in favor of the sons. (*Felter* v. *Ackerson*, 35 App. Div. 282; *Ward* v. *Ward*, 105 N. Y. 68; *Morse* v. *Morse*, 85 N. Y. 53; *Marsh* v. *Hague*, 1 Edw. Ch. 174; *Matter of Vowers*, 113 N. Y. 569; *Matter of Stafford*, 11 Misc. Rep. 436; *Hagerty* v. *Hagerty*, 9 Hun, 175; *Mason* v. *Mason*, 2 Sandf. Ch. 432; *Mason* v. *Jones*, 2 Barb. 229; *Butler* v. *Butler*, 3 Barb. Ch. 304.)

*Arthur H. Van Brunt* for respondent. Testator's general wish can be carried into effect only so far as is possible under a correct interpretation of the clauses of testamentary disposition as they exist in the will. The expression of an intention to create a trust which is not carried out cannot be given effect. (*Lowe* v. *Albertson*, 78 App. Div. 607; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86.)

GRAY, J. This will, written by the testator himself, evidences, in the confusion of its language, an effort to make a definite testamentary disposition of his estate, without the aid, or the advice, of legal counsel; which might be ascribed to an exceeding confidence in his own ability, or, as may be gathered in some expressions, to an unhappy distrust of lawyers. The result, in my opinion, has been disastrous to the instrument. We cannot hold that the intended testamentary disposition is sanctioned by our statutes. The court below has made a commendable, if not an heroic, effort to uphold it in part; but, when analyzed, the result is to reveal the purpose of the testator to tie up his estate in a trust, which might suspend the absolute ownership beyond the statutory period. He intended to place it in a trust for the three lives of his sons; subject to an annuity for his widow. It is the very plain duty of the court to find out what a testator has meant to do with his property after his death and, then, if it be possible to give his plan effect by a construction which will validate it, to do so. But the court cannot make a new will for him; nor should it be expected to resolve into law-

fulness of disposition some tangle of desires to provide for
future contingencies. The inquiry, in each case, must be
what provisions has the testator intended to make for the dis-
position of his estate and not whether he intended to dispose
of his estate according to the statutory rules governing testa-
mentary dispositions. When the provisions are ascertained
and understood, then is their legality to be determined.
(*Colton* v. *Fox*, 67 N. Y. 348.) Take this will as an illustra-
tion of what has been done by the judgment. The court
below has made three separate trusts for the testator's sons
and has directed the accumulation of income to cease upon
each attaining his majority. A very simple expedient, effect-
ing lawful results, as far as the court was able to go ; but it is
exactly what the testator did not wish to have done with his
estate and it, totally, upsets his testamentary plan.

Each will must be read and considered with reference to
its peculiar provisions and to the circumstances attendant
upon its making, and precedents are, rarely, of avail. In
this will, we can see that a trust was intended. So much
is clear. No particular formula of words, or terms, is ever
necessary to constitute a trust and it suffices for the plan,
if, upon a consideration of the instrument, the purpose of
a trust is manifest. Nor will it militate against the consti-
tution of several trusts that the capital of the estate is to be
kept together and administered as one fund for convenience ;
provided that it shall appear that the shares and interests of
the beneficiaries are made, or, clearly, intended to be made,
distinctly several. (*Tobias* v. *Ketchum*, 32 N. Y. 319 ;
*Morse* v. *Morse*, 85 ib. 53 ; *Ward* v. *Ward*, 105 ib. 68 ;
*Vanderpoel* v. *Loew*, 112 ib. 167, 180.) In this will the tes-
tator, at the outset, appoints a trustee for his will and there
are active duties imposed with reference to the administration
of the estate, which renders its possession by the appointee
necessary. It is not in doubt that the testator intended to
place his property in the hands of a trustee and the question,
simply, is whether more than one trust was intended and pro-
vided for by him. I think the question must be answered in

the negative. If any purpose is manifest in this instrument, it is that of keeping the property together as one trust fund, without severability, or termination, from the income of which the widow and the sons are to be provided for. Before making provision for them, he expressly declares that he "has thought it advisable to place all property in trust for my sons." This declaration is to be taken as expressive of what the testator is attempting and indicates, by its language, not conclusively, of course, a provision for a single trust. It is the very unmistakable notion of the testator, though confusedly worded, that the principal of his estate would be perpetuated. When he speaks of placing it in trust for his sons, it is "that it may pass on to my grandchildren. My most earnest desire is to perpetuate the name, which it is trusted may be for a good name in all generations." Subsequently, when providing for the "event of the death of his wife, and his children without issue," (which, from its place in the will, must be taken as referring to their death in his lifetime), by bequeathing "to his brothers, or brother equally," or, "if they are not alive, to the children, or children's children of my late sister Sarah," he adds "to be used by them for life and still deeded on to their children." Having developed this idea of perpetuity in his mind, he proceeds to make his provisions for his wife and three minor sons. In quoting any part of the will, the language has been given here as in the record. In the first place, he gives to her, during widowhood, "for the first year, or year and a half, while the estate is provided for, $2,000 per annum" and, thereafter, $4,000 in each year. Then he gives to his sons "during the year, or one and half years during settlement, the sum of $2,000 each, at least 100 pounds going with their mother to maintain the home, if called for." After that period, he increases the income of each son to $3,000 a year; but the sum of 200 pounds, or $1,000 are then to be "passed over for the maintenance of the house." Then, as to the further distribution of income, he becomes somewhat vague; for he says: "At the age of 25 years, when each child shall reach that age, not before, or

when the three children are 25, or the youngest 25 years old — I. donate and give to the three sons  *  *  *  75 per cent. of the income of the estate after payments to my wife and deductions for charges — the balance of 25 per centum of the net income being held and invested, until each child has arrived at the age of 30 years of age (30), when I bequeath to them, after all deductions, 98 per cent. of the net income — the balance of 2 per cent. keeping the estate in heart and to be invested. My son Vivian (the youngest) to attain the age of 25 and 30 years before the divisions" etc. What he meant, we may fairly assume, was that the youngest son must have attained the ages of 25 and 30 years, before the new divisions were to be made of the income; but the very pregnant words of this paragraph are in the gift to the sons, at certain periods, of 75, or 98, per cent. *of the income of the estate* and in the direction that *the balance of 25, or of 2, per cent. is to be held and invested,* without limitation of time. We have, then, as the plan provided by the testator, a gift to his wife of an annuity during widowhood and of varying sums, annually, to each son, until the youngest shall be 30 years old; with a charge upon each son's allowance of a certain sum in favor of the widow for the maintenance of the home. As the earlier declaration was of the intention ".to place all property in trust for my sons" and the later gift of income to the sons, after they all were 30 years old, was "after all deductions" etc. the result is that the annuity to the widow is made a charge upon the whole estate held by the trustee, with additional allowances to her from each son's income, while under 25 years of age.

It is plain that there was one indivisible trust constituted by the plan, to endure for the three lives of the sons, contrary to the provision of the statute, which limits the suspension of the absolute ownership of property to two lives in being at the testator's death; a provision which is violated when there is the possibility of such an occurrence. (*Schettler* v. *Smith,* 41 N. Y. 328; *Haynes* v. *Sherman,* 117 ib. 433.) This is plain; because there is lacking not only a direction in the

instrument for a division of the principal into several shares for the sons, but because, when there is a gift from income, it is made from the income as an entirety. When he arranges for incomes, after his three sons have all passed the age of 25 years, the gift to them then, is of "*seventy-five per cent. of the income of the estate*  *  *  *  the balance of 25 per centum of the net income being held and invested," and when they are all 30 years old, they are given "98 per cent. of the net income — the balance of two per cent  *  *  *  to be invested." It is the income of the whole estate, which is dealt with, and not the income of respective shares and if handled otherwise the purpose is frustrated. The testator was not a lawyer and, doubtless, being unfamiliar with the statutory restrictions upon the power of testamentary disposition, had only in mind a plan which he had thought out. That plan was to preserve the corpus of the estate intact; the apportionment of its income among his wife and sons, varying at times and in amounts, and an increase of the principal by additions from unexpended income, which, after his sons became 30 years old, was to be continuous by the addition, annually, of two per cent. of the entire income. There is nothing to indicate for whose benefit the accumulation is to be made and the only reasonable inference is that it was to go to increase the principal of the trust. When the testator proceeds to make provision for the two older sons, while "waiting for their brother to reach the ages of twenty-five and thirty years," he makes it clear that he contemplates but one indivisible trust, whose income he is distributing; for he gives, in that situation of affairs, to Thomas and Harold $500 each "extra" from the time they become twenty-five years old, till Vivian arrives at that age and till he "arrives at thirty years, when they share alike." This means that the two older sons were to have a larger share of the general income of the estate; for the $500 are given to each as "extra" and those sums would not come from shares. They share unequally up to a certain time and, only, afterwards do they share alike. A single trust being within this plan, the

testator could arrange such a provision; but, if separate trusts were to be carved out of his estate, such an unequal division would be impossible. Nor can it be successfully argued that such provisions of the will may be lopped off, without prejudice to the testator's plan. The question is, as I have before suggested, what provisions the testator intended to make and to determine their validity as made. As it was observed by Judge MARTIN, in *Herzog* v. *Title Guarantee & Trust Co.*, (177 N. Y. 86), " the intent to be discovered is not whether he intended to make a valid disposition of his estate; but what provisions he in fact intended to make. When that is found, it is for the court to determine whether such intended provisions are valid, or otherwise." " The duty of the court," as the learned judge, further and appositely, remarked, " is not to make a new will, to carry out some supposed, but undisclosed purpose * * * The duty of the court is to interpret, not to construct." We have seen what this testator wished to accomplish and we cannot subtract from his provisions without frustrating his purpose. His scheme must stand, or fall, as a whole, if we are not to construct a new will for him; for he has enveloped his estate in a single trust, which, as he intended, should care for and advantage it for defined purposes, relating to the maintenance and welfare of his family. Furthermore, the absence of any direction for the ultimate disposition of the corpus of the estate furnishes the inference that the testator had supposed that his plan took care of his estate to a time, when the " grandchildren," to whom he had referred in the earlier part of his will, might, naturally, be expected to come in for the inheritance. Again, to illustrate his intention to constitute but the one trust for all; if one of his sons should predecease his brothers and the widow, without leaving issue, that which would happen under this will would be that the trust would remain as it was and that the income would be shared by the survivors. Was that not his obvious purpose? He could not have intended that there should be three distinct trusts for his sons, when, in such an event as I have suggested, the share held in trust for the

3

one so dying and its income would become released. He has made no disposition in any such event. His whole scheme was that the trust term should continue for the purpose of paying the widow's annuity and the certain proportions of the net income to his surviving sons, determined by their ages.

I, therefore, think that we are forced to the conclusion that but one trust was constructed by the testator, which should continue to hold his estate, and it must follow, as it was dependent upon three lives, that it violated the statute against perpetuities. The trust scheme being invalid, the whole will must fail and the estate of the deceased must be divided among the widow and three sons in the statutory proportions prescribed in the case of an intestacy ; namely one-third thereof to the widow and to each son two-ninths thereof.

The widow's annuity, necessarily, falls with the failure of the trust scheme, of which it was part. Her claim of a right to enforce the ante-nuptial contract has no place in this action. It affects in no way the question presented. It purported to set aside the sum of 4,000 pounds as a "marriage settlement" and when referred to in the will, it is with reference to its bearing upon the amount of income to be allowed her, in the event that she prefers to have it stand. But the court has found that, at the time of testator's death, there was no specific property real, or personal, to any amount, which had been set aside as a marriage settlement. What, if any, may be the widow's rights under the contract, is a question with which the court, at present, is not concerned.

The judgment appealed from should be reversed and a judgment should be entered in conformity with this opinion ; with costs in all the courts to all parties, who have appeared by counsel, to be paid from the fund in the plaintiff's custody.

Edward T. Bartlett, J. (dissenting). I am of opinion that the testator succeeded in creating three valid separate trusts for the payment of the income of the estate to his three sons for life, subject to an annuity for the benefit of the widow.

The provisions of the will for unlawful accumulation of

income can be lopped off without affecting the validity of the separate trusts and the accumulation during the minority of each son.

I also am of opinion that the testator failed to make any lawful disposition of the principal of his estate on the termination of each of the said trusts, and, therefore, died intestate as to it. It follows that the trust company is the proper custodian of the principal during the existence of the respective trusts, and on the termination of each trust one-third of the same will pass under the Statutes of Distribution.

The judgment should be affirmed.

Cullen, Ch. J., Werner, Hiscock and Chase, JJ., concur with Gray, J.; Edward T. Bartlett, J., reads dissenting memorandum; O'Brien, J., absent.

Judgment accordingly.