### GREMS v. PARSONS et al.

(Supreme Court, Trial Term, Madison County. November 2, 1914.)

1. **WILLS** (§ 439*)—CONSTRUCTION—INTENT OF TESTATOR.
    Where the language of a will is plain, effect must be given to its import; but when ambiguous the intention of the testator, as drawn from the whole will and the surrounding circumstances, governs.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

2. **EXECUTORS AND ADMINISTRATORS** (§ 138*)—POWER OF EXECUTORS—SALE OF REAL PROPERTY.
    Where a will vested in the executrix power to sell any real property and made her trustee thereof, the power of sale should not be exercised, there being sufficient personalty to discharge all debts and the expenses of administration, for the only purpose would be to give the executrix commissions.
    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568–575; Dec. Dig. § 138.*]

3. **WILLS** (§ 634*)—CONSTRUCTION—INTEREST DEVISED.
    Where a testator devised land to his daughters for life, with remainder to their heirs, the heirs of the life tenants in being at the death of the testator take the fee, their interest being vested.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

4. **WILLS** (§ 634*)—CONSTRUCTION—INTEREST DEVISED.
    Where a testator devised land to his daughter for life, and provided that at her death he gave the land to his heirs, the will reciting that it was the purpose of the testator that his estate should not pass from his heirs, and that his daughter was without issue, the daughter takes a life estate; the fee going to those heirs of the testator in being at the time of the daughter's death and not vesting until then.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

5. **WILLS** (§ 601*)—CONSTRUCTION—INTEREST DEVISED.
    Where a testator devised property absolutely by one clause of his will, he cannot, by a subsequent clause, impose conditions upon alienation of the property.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340–1350, 1608; Dec. Dig. § 601.*]

6. **TRUSTS** (§ 25*)—CREATION—STATUTE.
    To create a valid trust it is not necessary to follow the words of Real Property Law (Consol. Laws, c. 50) § 96, which defines the purposes for which an express trust may be created.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 34–37; Dec. Dig. § 25.*]

---

7. WILLS (§ 671*)—CREATION—ESSENTIALS—"EXPRESS TRUST."

A testator gave to the daughter whom he named as executrix one-fourth of his estate absolutely, that gift being followed by devises and bequest of the use, income, and profit for life of similar interests in favor of the testator's other three daughters. There were also provisions for sale of the real estate for maintenance of the life tenants whenever deemed necessary in the discretion of the trustee. The will named the executrix as trustee. *Held* that, the essentials of an express trust being a trustee and an estate devised to him and a beneficiary, the will created a trust in favor of the three daughters given life estates; hence, it being the obvious intent of the testator that the trustee should control the property, she is entitled to possession, and the other three daughters only to the proceeds of the property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1577, 1578, 1586; Dec. Dig. § 671.*

For other definitions, see Words and Phrases, First and Second Series, Express Trust.]

Suit by Charlotte Grems against Nellie O. Parsons, individually and as executrix of F. W. Doolittle, deceased, and others, for the construction of the will. Will construed.

Frank R. Lenox, of Syracuse, for plaintiff.
Campbell & Woolsey, of Canastota, for defendant Nellie O. Parsons.
E. M. White, of Syracuse, for guardians.

KILEY, J. On July 5, 1913, Francis W. Doolittle died at his home in the village of Canastota, Madison county, N. Y. Most of his life had been spent in that village. He left a last will and testament, which had been made and executed by him in the month of January, 1912. The will was duly admitted to probate, and letters testamentary issued to his daughter, Nellie O. Parsons, whom he had named as executrix thereof. This action was brought for a construction of the will, and was tried at an adjourned Special Term of the Supreme Court in this county, April 7, 1914. Nearly every provision of the will is involved in the issues presented by the pleadings, and the testamentary provisions of said will are as follows:

"I, Francis W. Doolittle, of the village of Canastota, in the county of Madison and state of New York, being of sound mind and memory, do make, publish and declare this my last will and testament, in manner following, that is to say:

"First.—I direct that all my just debts and funeral expenses be paid.

"Second.—I give, devise and bequeath unto my daughter, Nellie O. Parsons, that part of my real estate consisting of my lots on the Homestead addition in the village of Canastota, county of Madison and state of New York.

"Third.—I give, devise and bequeath unto my grandson, Benjamin Grants, my slaughter house lot situate on the highway leading from the Indian Opening road to the road leading northerly from Main street in the village of Canastota.

"Fourth.—I give, devise and bequeath unto my daughter, Minnie Grants, the use, income and profits of my real estate on Taylor avenue in the village of Canastota and at her decease I give, devise and bequeath the same unto her heirs.

"Fifth.—I give, devise and bequeath unto my said daughter, Nellie O. Parsons, one-fourth of all the rest and remainder of my estate both real and personalty, absolutely and forever.

"Sixth.—I give, devise and bequeath unto my daughter, Charlotte Grems, the use, income and profit of one-fourth of the remainder of my estate with the privilege of using the principal thereof if at any time, in the discretion of my trustee, hereinafter named, it shall become necessary for her proper maintenance, care and support. At her death, I give, devise and bequeath the same to the heirs of said Charlotte Grems.

"Seventh.—I give, devise and bequeath unto my daughter, Minnie Grants, the use, income and profits of one-fourth of my estate both real and personalty with the privilege of using the principal thereof, if in the discretion of my trustee, hereinafter named, it shall become necessary for her proper maintenance, care and support. At her death, I give, devise and bequeath the same to the heirs of said Minnie Grants.

"Eighth.—I give, devise and bequeath the use, income and profits of one-fourth of the remainder of my estate to my daughter, Carrie O'Hara, with the privilege of using the principal thereof, if in the discretion of my trustee, hereinafter named, it shall become necessary for her proper care, maintenance and support. I make this provision realizing the fact that my said daughter, Carrie O'Hara, has no children and it being my desire that this portion of my estate shall not pass from my heirs. At the death of said Carrie O'Hara, I give, devise and bequeath the same to my heirs.

"Ninth.—I further direct that my hotel and fixtures, known as the 'Doolittle House' shall not be sold before the death of my youngest daughter, Charlotte Grems, it being my desire to perpetuate the family name as long as possible, unless in case said hotel should be burned down by fire.

"Tenth.—I hereby empower my executor hereinafter named to sell any and all of my real estate except the above mentioned Doolittle Hotel.

"Lastly.—I hereby appoint my said daughter, Nellie O. Parsons, trustee and executrix of this my last will and testament, hereby revoking all former wills by me made."

Francis W. Doolittle left him surviving Nellie O. Parsons, Minnie Grants, Charlotte Grems, and Carrie O'Hara, daughters; also Francis D. Grems, Benjamin F. Grants, George D. Grants, grandsons, Juanita M. Grems, Mandala Grems, granddaughters, and Charles O'Hara, an adopted son of Carrie O'Hara. Francis D., Juanita M., and Mandala Grems and George D. Grants are infants. The adopted son of Carrie O'Hara is also an infant, and all are parties to this action.

Decedent's only next of kin and heirs at law are his daughters first above named. Doubt is expressed as to the proper meaning and construction of clauses 6, 7, 8, 9, and 10 of said will, and as to whether the testator created a valid trust under the provisions of said will, and as to how the corpus of said estate should be held. The defendant denies that any doubt has arisen in her mind as to the meaning and construction of said will, and, in effect, claims by the evidence under her answer that a trust was created and that she holds the property as such trustee. The property left by decedent consists of both real and personal estate amounting to about $40,000 in value, and about equally divided, real and personal.

[1] The general rule that prevails in considering the evidence in a case like the present is clearly stated in the cases, and has become elementary. It is repeated in Ritch v. Hawxhurst, 114 N. Y. 515, 21 N. E. 1009, as follows:

"When the language of a provision of a will is plain and free from ambiguity, effect must be given to its import. When it is equivocal, the intention of the testator in the use of the language employed by him must be sought for by reference to all the provisions of the will, and to such circumstances as may properly be entitled to consideration. And in such case there

is no inflexible rule of interpretation to govern the determination of that inquiry. While rules of construction may aid somewhat the way to a conclusion, they are not to be used to frustrate the intention of the testator; but when that is ascertained the language and mode of expression, if of doubtful import, may be subordinated to such intention."

Again in Starr v. Starr et al., 132 N. Y. at page 158, 30 N. E. at page 385, the court says:

"In construing wills the court may transpose, reject, or supply words so that it will express the intention of the testator."

Again in Cammann v. Bailey, 210 N. Y. at page 30, 103 N. E. at page 827, in the opinion, the court lays down the rule as follows:

"The intention of the testator being reasonably clear, it is quite unnecessary to discuss the decisions made in other cases involving the vesting of property held in trust. Rules for the construction of wills are for the sole purpose of ascertaining the intention of the testator, and if the intention is clear and manifest it must control, regardless of all rules that have been formed for the purpose of determining their construction."

When we discover the true intention of the testator, if it does not offend against any provision of law, the plain duty of the court follows, viz., to declare it in the judgment.

[2] The first clause of the will is the general clause, which in no way affects a will contrary to law, whether present or absent. The second clause devises to his daughter specific legacies of real estate, and title passes to her at once under the will. Under the third clause of the will the grandson of testator is given a specific legacy of real estate. By the tenth clause of testator's will he gives the executrix a general power of sale of all his real estate, save one exception, and that is not the parcel given to the grandson. From the evidence, or from the provisions of the will, there is no reason disclosed why this power should be exercised as to this piece of real estate. There is personal property sufficient to meet the obligations of the deceased and expenses of administration (so conceded upon the trial); hence no reason for sale by the executrix or possession in the trustee, except for the purpose of getting commissions. Such disposition would be improper and illegal. Martin v. Andrews, 59 Misc. Rep. 298, 111 N. Y. Supp. 40, and cases cited in the opinion.

[3] The fourth, sixth, and seventh clauses of testator's will give life estates with remainder over to each of his daughters, mentioned by name in said clauses. The construction of these three provisions as to the vesting of the title to the property involved may be considered under the same head. These provisions seem to come under the rule, well established at the present time, that the heirs of the life users living at the time of the death of the testator take the fee and become vested with the title subject to the life estate. In Marsh v. Consumers' Park Brewing Co., 162 App. Div. 256, 147 N. Y. Supp. 695, the whole subject is so ably discussed that further citation is unnecessary. Judge Thomas, writing the opinion, has collated and considered nearly all of the cases theretofore decided in the appellate courts on that subject.

[4] Under the eighth clause of the will a different set of circumstances is presented, and I think a different holding must prevail. The general rule is that, where no time is fixed for the vesting of the fee incumbered by a life estate in the will of the testator, the death of the testator is the event when the fee vests and in the life of remaindermen who survive the testator; but when a time is fixed by the testator the general rule gives way to the provisions of the will. In the eighth clause of his will the testator records his reason for departing from the same rule he has followed in the fourth, sixth, and seventh clauses, viz., that his daughter Carrie O'Hara is without issue, and fixes the vesting of the fee at the time of her death, and in his heirs, not in hers. The exceptions to the general rule are cited in 162 App. Div. 256, 147 N. Y. Supp. 695, above referred to.

[5] The plan of the testator to care for and protect his own blood descendants in the use of his property is manifest in every line, and that he intended it for their good clearly appears. In the fifth clause of his will the testator devises and bequeaths to his daughter Nellie O. Parsons one-fourth of his estate. He could not find any stronger language to effectuate that purpose than he used. But by the ninth and tenth clauses of his will he attempts to impose a condition upon that portion of his estate known as "the Doolittle House," a hotel situate in the village of Canastota, N. Y. These provisions cannot be upheld, as they cut down an absolute fee theretofore to the daughter, and holding them void does not in any way affect the intent of testator as to where the fee should lodge. Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814; Greene v. Greene, 125 N. Y. 506, 26 N. E. 739, 21 Am. St. Rep. 743.

[6, 7] The next and last question, and the one seriously urged by the plaintiff, is that this will does not create a valid trust, and that the executrix, as trustee, cannot take possession of the estate; that the use provided for in the will go to the life users as tenants in common.

At this point it is well to look at the situation as disclosed by the will, the evidence, and argument of counsel. The testator had four daughters him surviving. That he had most confidence, by reason of her situation and experience, in the daughter, Nellie O. Parsons, named as executrix in his will, seems properly inferable. This is evidenced by the fact that he gave her upwards of one-fourth of his estate outright, named her executrix, and placed, or attempted to place, upon her the responsibility of dealing out more than the use of the fund created for the benefit of three of his daughters as she should deem necessary. Then comes a review of the kind of property that constitutes the several funds, or the residue after the specific legacies are satisfied, $20,000 real and $20,000 personal. The real estate consists, as appeared upon the argument, of 11 different parcels of different values. That testator did not *intend* that this property should be used, operated, and occupied by four different persons with different interests, subject to internal disputes and consequent frequent litigations, is to be strongly inferred. In three different instances he provides that the life beneficiaries may use "the principal thereof, if at any

time, in the discretion of my trustee hereinafter named, it shall become necessary for her proper maintenance, care and support." In the last clause he names Nellie O. Parsons "trustee and executrix of this my last will and testament." In addition to the foregoing he gave a power of sale—so that the provisions might be carried out if resort to real estate should become necessary in supplying beneficiaries a part of the principal.

The essential elements of any express trust are a trustee, an estate devised to him, and a beneficiary. The trustee and the beneficiary must be distinct personalities. Greene v. Greene et al., 125 N. Y. 506, 26 N. E. 739, 21 Am. St. Rep. 743. This is elementary, and the conditions exist here, if the testator has not failed in some other vital essential.

My attention is called to the provisions of section 96 of the Real Property Law (Consol. Laws, c. 50), which section defines the purposes for which an express trust may be created. To create a trust it is not necessary to follow the words of the statute. In Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989, we read:

"Each will must be read and considered with reference to its peculiar provisions and to the circumstances attendant upon its making, and precedents are rarely of avail. In this will we can see that a trust was intended. So much is clear. No particular formula of words, or terms, is ever necessary to constitute a trust and it suffices for the plan, if, upon a consideration of the instrument, the purpose of a trust is manifest. Nor will it militate against the constitution of several trusts that the capital of the estate is to be kept together and administered as one fund for convenience, provided that it shall appear that the shares and interests of the beneficiaries are made, or clearly intended to be made, distinctly several."

Plaintiff relies largely on Verdin v. Slocum, 71 N. Y. 345. There was no attempt there to rely upon a trust until creditors sought to assert their right under a judgment against the interest of the beneficiary, and he took nothing but the use. It seems this case is distinguishable from the case at bar. The trust attempted in the Matter of Bleckwehl's Will, 80 Misc. Rep. 468, 142 N. Y. Supp. 449, may well have failed, as absolute power of disposition was placed in two of the beneficiaries. Judge Vann, in Close v. Farmers' Loan & Trust Co., 195 N. Y. at page 99, 87 N. E. at page 1007, says:

"He thus clothed his executors with the power and duty of executing an express trust, as authorized by law. He did not call them trustees, nor term their position a trust; but neither is necessary to constitute a trust, provided the powers and duties are those of a trustee. He did not expressly give them title to the property, but that passes by implication when involved in the general scheme and intent."

The learned judge then quotes with approval Mee v. Gordon, 187 N. Y. 400, 80 N. E. 353, 116 Am. St. Rep. 613, 10 Ann. Cas. 172, where the power to collect rents and profits was upheld in the executor as trustees, although no such power was expressly in words given by the will.

It clearly appears from the will that the testator believed three of his daughters would need more than the income from a one-fourth of the residuum of his estate for their proper support and maintenance.

Assume the time comes when nothing is left but the real property. How can the beneficiaries get any of the principal without the intervention of a trustee? I am not unmindful of the provision, under some circumstances, where the life tenant can consent to take a gross sum; but the testator did not want the estate left by him subject to the inroads of such privilege, or he would have said so. On the other hand, he provided an instrument ready at hand to accomplish the purpose, viz., the power of sale, and to him a proper, discriminating, and controlling mind.

I think his purpose is plain, that it does not violate any rule of law, and under the authorities can be carried out. Nellie O. Parsons is trustee under the will of the testator. She is entitled to possession of the whole estate. as trustee, except the specific legacies disposed of by the will, and not subject to sale, except for payment of debts, etc. See paragraphs of will second, third, and fifth. This holding is necessary and legal to carry out the intention of the testator and to properly conserve the estate. Plaintiff and defendant are each entitled to a bill of costs, to be taxed, out of the estate. The attorney for the guardians is hereby allowed $100 for his services and expenses.

Let findings and judgment be prepared accordingly.