such allowances rests in the sound discretion of the court, and each case must necessarily be decided upon its own peculiar facts. I do not believe that upon the facts in this matter the general rule referred to is violated by permitting the item charged for stenography and typewriting to stand.

There being no objection to the reasonableness of the expenditure, and no contention that the same was not made, the objection is overruled, and the account will be settled as filed and amended.

Decreed accordingly.

(94 Misc. Rep. 533)

## In re FIDELITY TRUST CO.

## In re TELFER'S WILL.

(Surrogate's Court, Rockland County. March, 1916.)

1. WILLS ☞439—CONSTRUCTION—INTENT OF TESTATOR.
   The testator's intention governs in the construction of a will, if it be a legal intention; that is, not inconsistent with rules of law.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. ☞439.]

2. WILLS ☞446—CONSTRUCTION—CONSTRUCTION IN FAVOR OF VALIDITY.
   When the meaning of a testator is in doubt, that interpretation which will sustain the will is to be preferred to one which will defeat it.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 962; Dec. Dig. ☞446.]

3. WILLS ☞449—CONSTRUCTION—PARTIAL INTESTACY.
   The law favors a construction of a will which will prevent partial intestacy.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 965; Dec. Dig. ☞449.]

4. WILLS ☞669—CONSTRUCTION—CREATION OF TRUST.
   Where a will gives income and principal in equal shares out of fund kept in solido for mere convenience of investment, separate and independent trusts may be created for several beneficiaries, and the shares and interests will be several, though the fund remains undivided.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1575, 1576; Dec. Dig. ☞669.]

5. PERPETUITIES ☞4(17)—SUSPENSION OF ALIENATION—CONSTRUCTION OF TESTAMENTARY PROVISION.
   Where a will leaves the residuary estate to the executor in trust for the payment of the income to the three stepsons of testatrix in equal shares, and, on the death of either of them, bequeaths an equal one-third of the principal to the lawful issue of a stepson, but, if he should die without issue, then the share is to go to the executor, to be applied to the principal of the shares of the surviving stepsons, in equal parts, share and share alike, separate trusts are created for the three stepsons, so that the provision does not violate the rule against perpetuities.

   [Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 34; Dec. Dig. ☞4(17).]

6. WILLS ☞687(2)—CONSTRUCTION—ESTATE CONVEYED.
   Where a will left the residuary estate to the executor in trust for the three stepsons of testatrix, and provided, in the event of the death of a stepson without issue him surviving, that the share to which such issue would have been entitled shall be returned to and added in equal por-

tions to increase the shares of the surviving stepsons, there passes to the survivor, on the death of one of the stepsons without issue, an interest in the income only from the decedent's share, and not a portion of the principal.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1639; Dec. Dig. ☞ 687(2).]

7. WILLS ☞687(1).—CONSTRUCTION—ESTATE CONVEYED.

Where a will left the residuary estate in trust for three stepsons of testatrix, and provided that on the death of one of the stepsons without issue his share should return to the executor, to be added to the trusts for the survivors, on death of the survivors or either of them, their interest in the share of the stepson who predeceased them becomes intestate property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1638; Dec. Dig. ☞ 687(1).]

In the matter of the judicial settlement of the account of the Fidelity Trust Company, as executor and trustee under the last will and testament of Janet W. Telfer, deceased. Decree entered.

Rushmore, Bisbee & Stern, of New York City (Emil J. Villanyi, of New York City, of counsel), for executor and trustee.

John F. McFarlane, of Nyack, for beneficiaries of trust.

Mortimer B. Patterson and Arthur Watson, both of Nyack, special guardians for minor next of kin.

McCAULEY, S.   This proceeding was initiated by the Fidelity Trust Company for a judicial settlement of its account as executor of the last will and testament of Janet W. Telfer, deceased, and for the purpose of obtaining a determination as to the validity, construction, and effect of the eighth item or clause of the will.

The testatrix died March 15, 1914, and her will was shortly thereafter admitted to probate by this court, and letters testamentary thereon were issued to the accountant.   The husband of testatrix predeceased her.   She left no lineal descendants; her heirs at law and next of kin being two brothers, a sister, and two nieces, none of whom is mentioned in the will, save one, a brother, to whom an annuity of $200 is given so long as he lives.

The eighth clause of the will, which we are called upon to construe, is as follows:

"Eighth. All of the rest, residue and remainder of my estate, whether real, personal, or mixed, and wheresoever the same may be situate, I give, devise and bequeath unto my executor hereinafter named, but in trust nevertheless, to invest the same in good interest-bearing securities within the United States of America, and to collect and pay over the net income to each of my three stepsons, George Telfer, John Telfer and Andrew Telfer, for and during the period of their natural lives, in equal shares, one-third of said net income to each of my said stepsons, and which income shall be paid to them quarterly in each year, such quarterly payments to be computed and paid as, of and from the first day of January in each year.   Upon the decease of my said stepsons, or either of them, I give, devise and bequeath an equal one-third of the principal of my said residuary estate which may at that time be in the hands of my executor and trustee, unto the lawful issue of my said stepson so deceased should he or they die leaving issue, but should he or they die without issue, or should such issue predecease him or them, then and in that event I give, devise and bequeath the equal one-third share of my said residu-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ary estate to which his issue would have been entitled, unto the survivor or survivors of my said stepsons, to be applied to the principal of their shares in equal parts, share and share alike; such bequest and devise in the event of the death of either of my said stepsons, should he or they die leaving issue, him or them surviving, to be paid, determined, set over and transferred to said issue immediately upon my stepson's decease, but in the event that he or they die leaving no issue, him or them surviving, then such share shall be returned to, and added and applied in equal portions to increase the shares of my other surviving stepsons."

The beneficiaries of the trust created by this item are living. Two of them, namely, George and John Telfer, are married; the former having two children and the latter having no children. Andrew is unmarried.

The trust estate consists of personalty, and the validity of the trust is challenged upon the ground that, in contravention of the provisions of the Personal Property Law (Consol. Laws, c. 41) § 11, it suspends the absolute ownership of personal property, by limitation or condition, for a longer period than during the continuance, and until the termination of two lives in being at the death of the testatrix.

The interpretation and construction of wills, which are often expressed in inapt and ambiguous language, as a result of which the real purpose of the testator is rendered obscure, doubtful, and uncertain, is one of the most difficult and unsatisfactory duties with which courts have to deal, for it seldom happens that the facts in any two cases are so nearly alike as to permit those of one to be used as a precedent for another; and as a consequence each case is dependent, in a large measure, upon its own circumstances for whatever assistance may be obtained in an effort to ascertain the true meaning of the language employed. There are, however, certain rules of construction which are applicable to all cases, and which, when followed, are often quite helpful in the determination of questions which, without their aid, would be well-nigh impossible of solution.

[1] Thus it is a fundamental rule of construction that the testator's intention must govern, if it be a legal intention; that is to say, if it be not inconsistent with rules of law, statutory or otherwise. Therefore it is the duty of the court to find out what the testator has meant to do with his property after his death, and then, if it be possible to effectuate his plan by a construction which will validate it, to do so. Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989; Matter of Jones, 75 Misc. Rep. 47, 134 N. Y. Supp. 859.

[2] When the meaning of a testator is involved in doubt, and the provisions of his will are susceptible of two interpretations, one of which will sustain and the other defeat it, that construction is to be preferred which will uphold and sustain the will, because it is presumed to accord with the actual intention of the testator. Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933; Greene v. Greene, 125 N. Y. 512, 26 N. E. 739, 21 Am. St. Rep. 743; Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676; Hopkins v. Kent, 145 N. Y. 363, 40 N. E. 4; Trask v. Sturges, 170 N. Y. 482, 63 N. E. 534; Seitz v. Faversham, 205 N. Y. 197, 98 N. E. 385; Matter of Hinchman, 141 App. Div. 95, 125 N. Y. Supp. 699.

[3] The law favors a construction which will prevent partial intestacy. Redfield in his work on Wills says:

"The courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mostly as one calculated to carry into effect the presumed intention of the testator, for the fact of making a will raises a very strong presumption against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of his will."

See Schult v. Moll, 132 N. Y. 127, 30 N. E. 377, and cases there cited. See, also, to the same effect, Johnson v. Brasington, 156 N. Y. 181, 50 N. E. 859; Mills v. Tompkins, 110 App. Div. 212, 97 N. Y. Supp. 9.

These rules of construction are, of course, of no utility where there is no ambiguity in the language employed, and no doubt or uncertainty in respect to the testator's meaning and intention. There is but one question in such a case to be determined by the court, and that is whether the testamentary disposition is valid or otherwise. The case at bar, however, does not come within that category.

Did the testatrix intend that the entire trust fund should be held in solido until the death of her last surviving stepson, and must the language which she has employed to express her purpose be so construed? Or did she intend to create three separate and distinct trusts, one in favor of each stepson, the fund to be kept in solido for convenience of investment, and may her language be so construed without doing violence to any rule of law; for, concededly, separate and independent trusts may be created for several beneficiaries, and the shares and interests may be several, even though the fund remain undivided? These are the first and more important questions for consideration.

Let us now examine the clause under consideration, keeping in mind these fundamental rules of interpretation, and ascertain what the purposes of the testatrix were. It is conceded by counsel, upon the authority of Leach v. Godwin, 198 N. Y. 35, 91 N. E. 288, and cases there cited, that if there is but one trust the entire disposition is invalid, inasmuch as the corpus of the trust fund is tied up for a longer period than the statute permits, namely, for three lives in being at the time of the death of the testatrix.

[4] The principle, however, is well established that in cases where income and principal are given in equal shares out of one fund, kept in solido for mere convenience of investment, separate and independent trusts may be created for several beneficiaries, and the shares and interests will be several, even though the fund remains undivided. Wells v. Wells, 88 N. Y. 323; Schermerhorn v. Cotting, 131 N. Y. 48, 29 N. E. 980; Locke v. Farmers' Loan & Trust Co., 140 N. Y. 135, 35 N. E. 578; Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312; Matter of Mount, 185 N. Y. 162, 77 N. E. 999; Leach v. Godwin, supra.

[5] It is true that the testatrix has not, in express terms, separated the fund into three parts, at the beginning of the trust; but in subsequent provisions of the clause, all of which must be considered in ar-

riving at her purpose, her language clearly indicates, I think, that the fund should be regarded as if it were composed of three severable and distinct parts. Her primary purpose was, of course, to provide an income for the maintenance or use of her stepsons so long as they live. She accordingly directs that the residuum of her estate shall be invested, and that one-third of the net income therefrom shall be paid to each of her stepsons, during the period of his natural life. There is no express direction here that the fund shall be treated or considered as one inseparable or indivisible fund, even during the joint lives of the stepsons. Upon the death of either stepson, one-third of the principal is given to his issue, if he leave any, and, if he leave none, the one-third of the principal, to which his issue would have been entitled, is given to the surviving stepsons, "to be applied to the principal of their shares, in equal parts, share and share alike."

The parts into which, upon the death of either stepson, with or without issue, the trust fund is to be divided, are spoken of as "shares." The division or separation is to take place upon the death of a stepson, either with or without issue, and thereafter the trust fund is to be treated and considered as if there were three separate and distinct shares. It is also to be observed that, upon the death of a stepson without issue, the testatrix does not direct that his share shall be returned to the "fund," but to the "shares" of the surviving stepsons. There is, also, upon the happening of either contingency, a further and specific bequest of a "share," to wit, one-third, of the principal of the trust fund. The bequest is to the issue of the stepson, if he leave issue, and, if not, to the surviving stepsons. The word "share," as commonly understood, means one of a certain number of equal portions into which property or invested capital may be divided. It conveys the idea of several, not joint, ownership. The portions of the surviving stepsons are also spoken of as "shares." If the testatrix intended to create one single and indivisible trust, then the language which she has employed to that end is inapt and inexpressive.

It is also to be observed that the testatrix, by words of present gift, disposes of the remainder of each share, except that upon the death of the last surviving stepson, without issue, she has failed to effectually dispose of his share of the corpus of the fund. Moreover, the direction to collect the income, and to pay it in equal shares to the stepsons, during their respective lives, indicates, I think, that it was to be treated distributively, and that each stepson should take the income from a definite share during life. The testatrix no doubt failed to direct a division or separation of the fund during the joint lives of the stepsons, for the reason that the interests in its accruing income were equal, and very possibly for convenience of investment; but, as it appears to me, these shares were meant to be separate and distinct, and the trust as to each share was terminable at its own date, so that the trust ran for three different periods, and in three different divisions or sections. Therefore, without noting the disposition of the remainders, the inference, we repeat, seems just and reasonable that the testatrix contemplated, not one trust to run for three lives, but three trusts, each to run for a single life. See Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481. I feel constrained, therefore, to hold that the trusts created by

the residuary clause are not indivisible or joint, but that they are independent, separate, and distinct, each to be measured by its own terms, and having its own several purpose to accomplish.

There is no difficulty in regarding these three shares as separate and several, although the fund itself was to be kept in solido until the moment for an actual separation should come. Locke v. Farmers' Loan & Trust Co., supra; Savage v. Burnham, 17 N. Y. 571; Stevenson v. Lesley, 70 N. Y. 512. The language of the will under consideration is not precisely similar to that employed in any of the various cases which we have examined; but we think our conclusions are amply sustained by authority, and especially by the following cases: Boynton v. Lahens, 81 Misc. Rep. 352, 143 N. Y. Supp. 499; Matthews v. Studley, 17 App. Div. 303, 45 N. Y. Supp. 201; Locke v. Farmers' Loan & Trust Co., supra; Vanderpoel v. Loew, supra; Wells v. Wells, supra; Stevenson v. Lesley, supra; Post v. Bruere, 127 App. Div. 250, 111 N. Y. Supp. 51.

The intention of the testatrix was that upon the death of a stepson, if not before, his share, namely, one-third, should be released or separated from the corpus or principal of the trust, and go to his issue in equal shares absolutely, and therefore, to that extent, and as to that share, the trust should terminate and the principal vest absolutely in the issue. There is obviously up to this point a suspension of ownership but for a single life, and each trust, therefore, must be considered as valid.

[6] Assuming, therefore, that there is a separate and valid trust in favor of each stepson, what disposition did the testatrix intend to make of the share of a stepson who dies without issue? Did she intend that upon the death of a stepson without issue the share of the principal from which he had derived the income should be added to the respective funds held in trust for the surviving stepsons, or that it should go to them absolutely?

The will provides that in the event of the death of a stepson without issue him surviving, the share of the residuary estate to which such issue would have been entitled shall be returned to and added and applied in equal portions to increase the shares of the surviving stepsons. The language must, in our opinion, be interpreted not as an absolute gift of such a share to the surviving stepsons, but as a direction to the trustee to add to it, and treat it as a part of the fund from which the surviving stepsons are to receive the income. The use of the word "added" suggests something to which an addition can be made. The surviving stepsons are not given any part or share of the residuary estate, but only the income from certain parts or shares. These parts or shares constitute portions of the estate to which additions can be made; and we think that the very obvious meaning of the testatrix was that upon the death of a stepson, without issue surviving, the portion of the residuary estate then held in trust for his benefit should be added, in equal proportions, to the parts or shares held by the trustee for the benefit of the surviving stepsons.

We find no language that would justify the construction that the purpose of the testatrix was to make an absolute gift to any of her

stepsons, but, on the contrary, both the language and the general scheme of the will indicate that the stepsons shall receive only income.  Simpson v. Trust Co. of America, 129 App. Div. 200, 113 N. Y. Supp. 370.

[7] What disposition, therefore, did the testatrix intend to make of the secondary share which a surviving stepson may acquire upon the death of a stepson without issue?  The will provides, as already noted, that upon the death of a stepson without issue his share shall be applied in equal parts to the principal of the shares of the surviving stepsons, but it contains no express or implied disposition of these secondary shares upon the death of the surviving stepsons.  We think, therefore, that in the event of such a contingency the testatrix must be deemed to have died intestate as to these secondary shares.  In Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481, where the court construed a similar testamentary provision, it was held:

"That it was the intent of the testator to create five separate and distinct trusts, each measured by its own terms, and terminable by itself at its own date, and so there was no unlawful suspension of the power of alienation; that each of the five primary beneficiaries took an equitable estate in his or her several shares, with a remainder over to his or her issue, which vested, if not at the death of the testator, at least at the death of the life tenant, and so at the termination of one life in being; that the intent of the provision creating substituted remainders in case of the death of one or more of the life tenants without issue, was to add the primary share of the child so dying, in equal parts, to the remaining primary shares, and to subject the added proportions to precisely the same limitations as already governed the original shares; that while the result might be to add a second life in being to the period of suspension in each case, the substituted remainder of each secondary share would vest, as did the primary shares, at the death of the parent, and, therefore, at the end of two lives; that in case of the death of one child without issue and then of another, while upon the death of the first his or her original share would go into the common fund as directed and a part of it in the form of a secondary share would be enjoyed by each of the other children during his or her life, and vest accordingly, it was not to be presumed, in the absence of express direction, that it was the testator's intent that the fractions of that secondary share, when set free by the death of the second child, should again go into the common fund, but that the fraction so added to the life estate of each of the other children would vest in each case on the death of that owner, and so became alienable at the end of two lives in being."

I am therefore of the opinion that the clause under consideration should be interpreted and construed as follows: (1) That it creates three separate and distinct trusts, one in favor of each stepson, each being determinable according to its own terms, and, therefore, that there is no unlawful suspension of ownership; (2) that each stepson is entitled to receive the income from his primary share, namely, one-third of the residuary estate, as long as he lives; (3) that upon the death of the first stepson his issue, if he leave any, will be entitled to the principal of the share previously held in trust for him, and his personal representative will be entitled to any accrued income then in the hands of the trustee, and if the said stepson shall leave no issue him surviving, then and in that event, the principal of his share shall be applied in equal parts to the principal of the shares of the two surviving stepsons, and therewith invested, and the surviving stepsons will be entitled to the income from said secondary shares so long as they live; (4) that upon the death of the second stepson, his issue, if he

leave any, will be entitled to the principal of his primary share, and his personal representative will be entitled to any accrued income from either the primary or secondary share then in the hands of the trustee, and the next of kin of the testatrix, as in case of intestacy, will be entitled to said secondary share, and if the said stepson shall leave no issue him surviving, then and in that event his primary share shall be applied to the principal of the share of the last surviving stepson and therewith invested, and the last surviving stepson shall be entitled to receive the income therefrom as long as he lives; (5) that upon the death of the last surviving stepson, his issue, if he leave any, will be entitled to the principal of his primary share, and his personal representative will be entitled to any accrued income from either the primary or secondary shares then in the hands of the trustee, and the next of kin of the testatrix, as in case of intestacy, will be entitled to said secondary shares, and if the said stepson shall leave no issue him surviving, then and in that event the next of kin of the testatrix will, in like manner, as in cases of intestacy, be entitled to the said primary share.

A decree in accordance with these conclusions may be entered herein upon the usual notice.

Decreed accordingly.