In the Matter of the Will of ROBERT J. HORNER, Deceased.
LILLIAN HORNER, Appellant; GRACE B. SIMMS et al.,
Respondents.

Will — construction — trust subsisting during four minor-
ities — illegal suspension of absolute ownership — trust
upheld where dominant purpose is division into separate
shares terminable by separate minorities or lives — when
subordinate illegal provision may be cut off — trust measured
by lives or minorities of persons not in being void — when
share for benefit of living child not severable from shares for
afterborn issue — when reversal as to appellant does not affect
shares of those not appealing.

1. If the dominant purpose of a testator is the creation of a single
trust subsisting during four minorities, absolute ownership is illegally
suspended (Pers. Prop. Law [Cons. Laws, ch. 41], § 11), and the trust
in its entirety is void, even though in some contingencies it may end
within the statutory term. On the other hand, if the dominant
purpose in the creation of the trust is that of division into separate
shares terminable by separate minorities or lives, the trust to that
extent may be upheld, even though in some other contingency it is
to be illegally prolonged.

2. Testator, by a provision of his will, directed his trustees to pay
out of the interest accruing upon a trust created for the benefit of
children of a son, such sums as they should deem advisable for the
maintenance and education of said son's four named children and
upon any of said children reaching the age of twenty-one years to
pay to said child his or her interest in the trust fund, to be determined
by the number of said children then surviving, and, after all of said
children had reached the age of twenty-one and the payment had
been made, that the trust should terminate; that should any of
said children die before reaching the age of twenty-one years, leaving
issue him or her surviving, the said issue should receive the portion
of said fund the parent would have received if living. By another
subdivision of the will the trustees were authorized, even while minority
continues, to pay to each child, in any one year, out of principal, a sum
not exceeding an amount named " as an advancement." *Held*, upon
examination as to the validity of the trust, that the stress is upon
shares into which an aggregate is conceived of as at least constructively
divided and not upon an aggregate in which shares have been sub-

merged. While a possible result of the death of a child during minority without issue will be that the primary share will be kept within the trust for three lives or minorities beyond the life of the child who would have taken it if he had lived to be of age, the provision that in given circumstances a share shall fall back into the general body of the trust and remain unsevered from the bulk is so subordinate in importance and so separable in function that we are at liberty to cut it off and preserve what goes before. What. the testator had in mind was a primary desire that each child at majority should have an equal share of the principal, a fourth of the entire fund, with a secondary desire that if this became impossible, the fourth should go to issue, and, in default of issue, should be retained, as an accretion to the whole. This is carried out by treating the four shares of principal as having a several existence from the beginning, and as subject from the beginning to the vicissitudes of several limitations.

3. By a further provision testator attempted to erect a similar trust for the benefit of children of a daughter, but without naming them, with the added provision that if no such children be in being at the time the trust shall take effect the income shall go to the daughter during her life unless there be children of her blood, and also for the ultimate disposition of principal and accumulated interest in the event of the death of the daughter without issue her surviving. At the date of the decree, as at the death of the testator, the daughter had one child. The trust was established, however, for the benefit not only of that child, but of any children thereafter born to her mother. So far as its duration is measured by the lives or minorities of persons not in being, the provisions were in plain conflict with the prohibition of the statute. Nor may the share for the benefit of the one child of the daughter living at the death of testator be severed from the shares for afterborn issue. (*Matter of Mount*, 135 N. Y. 162, 169, distinguished.)

4. The next of kin, having acquiesced in the surrogate's decision which upholds the trust for the one child during her minority, only the widow having appealed, a reversal of the judgment as to the appellant does not affect the shares of those who have preferred to acquiesce.

*Matter of Horner*, 206 App. Div. 794, modified.

(Argued February 19, 1924; decided April 1, 1924.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 6, 1923, which affirmed a decree of

the New York County Surrogate's Court construing the will of Robert J. Horner, deceased.

*Maurice R. Roche* and *Milton Dammann* for appellant. The trust attempted to be created under clause 9 for the benefit of the children of Grace B. Simms is invalid. (*Matter of Wilcox*, 194 N. Y. 288; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Greenland* v. *Waddell*, 116 N. Y. 234; *Whitefield* v. *Crissman*, 123 App. Div. 233; *Bindrim* v. *Nelrich*, 64 App. Div. 444; *Matter of Finck's Estate*, 171 N. Y. Supp. 573.) The trust attempted to be created under the provisions of clause " tenth," for the benefit of the children of Robert J. Horner, is invalid. (*Matter of Magnus*, 179 App. Div. 359; *Matter of Wilcox*, 194 N. Y. 288; 125 App. Div. 152; *Central Union Trust Co.* v. *Egleston*, 185 N. Y. 23; 110 App. Div. 893; *Herzog* v. *Title Guarantee, etc., Co.*, 177 N. Y. 86; 85 App. Div. 549; *Matter of Central Union Trust Co.*, 193 App. Div. 292; *Simpson* v. *Trust Co. of America*, 129 App. Div. 200; *Whitefield* v. *Crissman*, 123 App. Div. 233; *Matter of Howland*, 75 App. Div. 207; *Schlereth* v. *Schlereth*, 73 App. Div. 283; *Leach* v. *Godwin*, 198 N. Y. 36; 127 App. Div. 98; *Matter of Verplanck*, 91 N. Y. 439; *Wells* v. *Wells*, 88 N. Y. 323; 25 Hun, 647; *Post* v. *Bruere*, 127 App. Div. 250.)

*Paul Gross* for Grace B. Simms respondent. A valid life estate was created under the trust for the benefit of Gladys Simms. The principle is well settled that courts lean in favor of the preservation of such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator. (*Matter of Hitchcock*, 222 N. Y. 57; *Matter of Mount*, 185 N. Y. 162; *Kalish* v. *Kalish*, 166 N. Y. 368.) The trust for the benefit of the children of Robert J. Horner, Jr., is severable, and is valid for the minorities of each of the children. (*Matter of Colegrove*, 221 N. Y. 455;

*Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Steinway* v. *Steinway*, 163 N. Y. 183; *Carrier* v. *Carrier*, 226 N. Y. 114; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Orr* v. *Orr*, 147 App. Div. 753; 212 N. Y. 615.)

*Abraham Benedict* for Elsie Horner et al., respondents. The trust in paragraphs 8 and 10 for the benefit of the Horner children is valid. It does not unlawfully suspend absolute ownership. (*Everitt* v. *Everitt*, 29 N. Y. 39; *Robert* v. *Corning*, 89 N. Y. 225; *Duncklee* v. *Butler*, 38 App. Div. 99; *Hill* v. *Guaranty Trust Co.*, 163 App. Div. 374; *Matter of Bavier*, 164 App. Div. 358; *Becker* v. *Becker*, 13 App. Div. 342; 162 N. Y. 152; *Burke* v. *O'Brien*, 115 App. Div. 574; *Coston* v. *Coston*, 118 App. Div. 1; *Matter of Lally*, 136 App. Div. 781; 198 N. Y. 608; *Matter of Howland*, 75 App. Div. 207; *Appell* v. *Appell*, 177 App. Div. 570; 221 N. Y. 602.) The trust provision should, if necessary, be construed as creating a separate trust for each of the Horner children, and, so construed, is valid. (*Stevenson* v. *Lesley*, 70 N. Y. 512; *Wells* v. *Wells*, 88 N. Y. 323; *Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Leach* v. *Godwin*, 198 N. Y. 35; *Matter of Colegrove*, 221 N. Y. 455; *Post* v. *Bruere*, 127 App. Div. 250; Chaplin, Suspension of Power of Alienation [2d ed.], § 107.)

*Paul N. Turner* for executors and trustees of Robert J. Horner, deceased, respondents.

CARDOZO, J. The proceeding is one for the construction of a will.

Robert J. Horner directed that his residuary estate be converted into money and then disposed of it as follows: One-fourth he gave to his daughter Grace B. Simms; the remaining three-fourths he gave to trustees to divide into three equal funds, of which the first was to be called "A trust for the benefit of children of Grace B. Simms;" the second, "A trust for the benefit of children of Robert

J. Horner, Jr.," and the third, "A trust for the benefit of Robert J. Horner, Jr." The validity of these trusts is the question now before us. The next of kin of the testator acquiesce in the decree. The wife alone appeals.

Convenience will be promoted if the second of the three trusts be considered at the outset. Its provisions are as follows:

" *Tenth.* I direct my Trustees to pay out of the interest accruing upon the trust created for the benefit of children of Robert J. Horner, Jr., such sums as they shall deem advisable for the maintenance and education of Elsie Horner, Muriel Horner, Robert J. Horner, Jr., and Constance Horner. Upon any of said children reaching the age of twenty-one (21) years, I direct my Trustees to pay to said child his or her interest in said trust fund as shall be determined by the number of the said children then surviving and after all of the said children herein mentioned have reached the age of twenty-one (21) years and the payments herein provided have been made, the trust created for their benefit shall thereupon terminate. Should any of said children die before reaching the age of twenty-one years, leaving issue him or her surviving, the said issue shall receive the portion of said fund the parent would have received if living."

If the dominant purpose is the creation of a single trust subsisting during four minorities, absolute ownership is illegally suspended (Pers. Prop. Law [Cons. Laws, ch. 41], § 11), and the trust in its entirety is void, even though in some contingencies it may end within the statutory term (*Central Trust Co. of N. Y.* v. *Egleston,* 185 N. Y. 23; *Leach* v. *Godwin,* 198 N. Y. 35). On the other hand, if the dominant purpose in the creation of the trust is that of division into separate shares terminable by separate minorities or lives, the trust to that extent may be upheld, even though in some other contingency it is to be illegally prolonged (*Matter of Colegrove,* 221 N. Y. 455). We must say whether unity or pluralism is the preponderating

note.  The choice at best is between two obscurities, and yet the stress, it would seem, is upon shares into which an aggregate is conceived of as at least constructively divided, and not upon an aggregate in which shares have been submerged.  We see this when we trace the disposition of the fund in the several contingencies suggested by the will.  If there is no death before majority, then, as each minority ends, an equal share is to be set free.  If death occurs before majority, but issue are left, a share, still conceived of as appropriated to the parent during life, will be passed on to the issue, who stand as the parent's representatives, and again will be set free.  " The said issue shall receive the portion of said fund the parent would have received if living." Even while minority continues and the trust is in force, the trustees are authorized by another subdivision of the will, the thirteenth, to pay to each child in any year out of the principal of the fund a sum not exceeding $500, which is to be charged " as an advancement." Trouble arises for the first time in the contingency cf death during minority without issue.  In that contingency, the share that would have gone to the child so dying if he had survived until majority is not to be severed from the bulk, but is to be held within the trust for the use of the survivors.  This must be the meaning, for only thus can effect be given to the direction that a child arriving at majority is to receive a share that shall be determined, not by a division into fourths, but by the number of children surviving when division is to be made.  A possible result will be that the primary share will be kept within the trust for three lives or minorities beyond the life cf the child who would have taken it if he had lived to be of age.  Either there must be excision at some point before the expiration of two lives, or the gift must perish altogether.  We had before us in *Matter of Colegrove* (*supra*) a will almost the same as this one in the effect of its provisions, though differing

in form. A way was found, while removing what was unsound, to preserve what was essential. So here the vital parts of the plan are untouched by the excrescence. The provision that in given circumstances a share shall fall back into the general body of the trust and remain unsevered from the bulk is so subordinate in importance and so separable in function that we are at liberty to cut it off and preserve what goes before.

We have said that the offending provision has not only a function that is separate but an importance that is subordinate. The ends that were uppermost in the thought of the testator assume division rather than unity for their effectual attainment. Shares will be severed and distributed at the successive periods of majority if hope and expectation, reasonably entertained in view of the ages of the children, are not thwarted by events. Consolidation or absorption will at best be the fulfillment of a secondary purpose, to take effect only as a substitute when the primary one has failed. We said in *People ex rel. Alpha Portland Cement Co.* v. *Knapp* (230 N. Y. 48, 60), considering the question whether a statute was to be enforced with the invalid part cut out or was to be rejected altogether, that " the answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots." The same thing may be said of the surgery of wills (*Carrier* v. *Carrier*, 226 N. Y. 114, 124). Here also the principle of division is not solely a principle of form. In part, though not wholly, it is a principle of function (*People ex rel. Alpha Portland Cement Co.* v. *Knapp, supra*). The tests of presumable intention and probable desire will be commonly of greater potency than those that have their origin in the separation of the good from the bad by paragraph or sentence (*Oxley* v. *Lane*, 35 N. Y. 340, 349; *Harrison* v. *Harrison*, 36 N. Y. 543, 547). Viewing the problem in this spirit,

we shall hesitate to lay emphasis upon differences of form
where there is no difference in effect, as we should be
doing if we were to establish a distinction between the
Colegrove will and this one. No doubt, there will be
times when differences merely formal will be, none the
less, controlling (Gray on the Rule against Perpetuities,
§ 349), yet we will not press them farther than we must.
The persuasive thought will rather be whether the differ-
ences are of such a nature as to suggest varying con-
ceptions of what is vital in the scheme. We may be
fairly sure that this testator was not troubling himself
with distinctions between shares which lose their identity
in certain contingencies through fusion or absorption
into the whole, and a whole which loses its identity
through dissolution into shares. What he had in mind
was a primary desire that each child at majority should
have an equal share of the principal, a fourth of the
entire fund, with a secondary desire that if this became
impossible, the fourth should go to issue, and, in default
of issue, should be retained as an accretion to the whole.
It could hardly have occurred to him to hesitate when
driven to a choice between the destruction of the whole
and the loss of the accretion. We carry out his purpose
when we treat the four shares of principal as having a
several existence in his thought from the beginning, and
as subject from the beginning to the vicissitudes of several
limitations (*Vanderpoel* v. *Loew*, 112 N. Y. 167, 177, 180;
*Everitt* v. *Everitt*, 29 N. Y. 39, 85; *Wells* v. *Wells*, 88
N. Y. 323, 333).

We do not overlook the argument that the only direction
for division to be found in the will is one proportioning
the shares to the number of children surviving when
majority is reached. The assumptions of the argument
do not accord altogether with the facts, for there may be
an earlier division in the event of death during minority
with issue (cf. *Everitt* v. *Everitt*, *supra*). Except in that
contingency, however, division is postponed until one

of the four children is of age, if by division we mean a physical severance of shares which till then have been physically undivided, and a payment upon severance to the ultimate donees. We might have said the same thing in *Matter of Colegrove (supra)*. It is precisely for this reason that the trust before us here, like the one before us there, involves in some contingencies an illegal limitation. That feature lacking, we should have nothing to lop off and nothing to discuss. But to say that there is no direction for division in the sense of payment is not to say that there is none for a constructive division into shares, atoms within the mass, each with its several life (*Vanderpoel* v. *Loew, supra*). Such a severance is not always the outcome of express command. There are times when it is rather the product of a state of mind. The shares exist as shares if the testator thought of them as shares. Whether he so thought of them will be determined by many things; by the way that he has dealt with them in alternative contingencies; by all the subtle suggestions of an assumption or an intention imperfectly expressed. We find, indeed, when analysis is pressed, that the determining considerations are much the same as those that distinguish a joint tenancy from a tenancy in common (cf. FINCH, J., in *Hillyer* v. *Vandewater*, 24 N. E. Rep. 999; memo. of decision, 121 N. Y. 681). Unity of ownership is the characteristic of the one estate (4 Kent's Comm. 358), and unity of possession the characteristic of the other. Each tenant in common " is considered to be solely or severally seized of his share " (4 Kent's Comm. 368; cf. *Allen* v. *Almy*, 87 Conn. 517, 526). If we were asked to define the estate in remainder, dependent upon the termination of the trust, that is given to each child, we should find it impossible to do so in terms of joint tenancy. We should have to say that each child has a remainder, contingent upon his attaining his majority, in a portion of the fund which,

if that contingency is satisfied, cannot be less than a fourth, but which may be increased, by force of a provision for cross remainders among survivors, in the additional contingency that another child shall die a minor without issue (4 Kent's Comm. 201; *Houghton* v. *Brantingham*, 86 Conn. 630). The gift to survivors is not secured to them by virtue of a *jus accrescendi* attaching as an inseparable incident to a joint ownership of the whole. The gift is a cross remainder involving succession to a part. The will in this respect is not unlike the one considered by the Supreme Court of Connecticut in *Houghton* v. *Brantingham* (*supra*), where the court said: "This was not the creation of a joint tenancy with right of survivorship, but the creation of a freehold estate in one-half of the property of the testatrix in each of the sons during their joint lives with a contingent remainder in fee of the entire estate in the surviving son." Survivorship as the result of an alternative limitation is very different in its implications from survivorship attaching as an incident of tenure. These general considerations are fortified by others when we attempt by closer scrutiny to extract the thought of the testator. Two tokens of understanding stand out especially significant. One is the direction that each child may receive an annual advancement upon his portion of the principal, to be charged to him as such in the accounts of the trustees (cf. *Schermerhorn* v. *Cotting*, 131 N. Y. 48, 62). No bookkeeper would find it easy, or, it may be, possible, to comply with that direction without entries that would import a division into shares. The point of view of the testator, who was, it seems, a business man, and not a lawyer, is fairly reflected in the point of view of an accountant, keeping the books of account to which business is accustomed. Even more significant are the marks of the testator's understanding that upon death during minority, what has been appropriated to the child so dying is something that may be

identified and segregated and appropriated anew, passing to issue or to survivors according to the event. If the express direction that in such a contingency the share should go to issue, had been supplemented by an express direction that, in default of issue, it should be added to the trusts for the survivors, the latter direction, almost beyond question, would be separable, though illegal (*Matter of Colegrove, supra*). We think it is not less separable because it is implied.

The line of cleavage thus drawn between what is to be kept and what destroyed, does not divide a mere continuum and split into parts a gift essentially unbroken (cf. Gray on the Rule against Perpetuities, §§ 355, 349; *Smith* v. *Bence*, 1891, 3 Ch. 242, 249; *Hancock* v. *Watson*, 1902, A. C. 14, 22; *Gray* v. *Whittemore*, 192 Mass. 367, 372, 373). It is not arbitrarily interjected by the court at a point where the testator had no thought of a resting place, a pause, a stage upon the journey. It follows seams and contacts suggested by the will itself. In the thought of the testator, the death of a child during minority is the signal for a halt and a new reckoning (*Carrier* v. *Carrier*, 226 N. Y. 114, 124). The trustees must inquire whether his next of kin are descendants or collaterals, and shape the trust accordingly. In one contingency, death with issue, the new apportionment will be valid. In another, death without issue, the new apportionment will be void upon the expiration of the second life, if not upon the expiration of the first one. Whatever the advance, the significance of the halt remains. The will in all its provisions is instinct with the thought that each of the four children has a share or interest of his own, which upon majority or death must be distributed anew. If the grafted shoots are to be sacrificed, the parent stock may be preserved (*Oxley* v. *Lane, supra; Schey* v. *Schey*, 194 N. Y. 368, 375). We go along with the testator as far forward as we may.

The next subject to be considered is the trust for the

benefit of the children of Mrs. Simms. Its provisions are as follows:

" *Ninth.* I direct my trustees to pay the interest upon the trust for the benefit of children of Grace B. Simms from time to time, for the maintenance and education of said children. Upon any child of Grace B. Simms reaching the age of twenty-one (21) years, I direct my trustees to pay to said child his or her interest in said trust fund as shall be determined according to the number of children of Grace B. Simms then living, and after all the children of said Grace B. Simms then living have reached the age of twenty-one (21) years and the payments herein provided have been made, the trust created for their benefit shall thereupon terminate. Should any of the children of said Grace B. Simms die before reaching the age of twenty-one (21) years, leaving issue him or her surviving, the said issue shall receive the portion of said fund the parent would have received, if living. In case there shall be no children of the said Grace B. Simms living at the time this trust goes into effect, I direct my trustees to pay the interest upon said trust fund to my daughter, Grace B. Simms, during the term of her natural life unless thereafter there should be children of her blood. In case of the death of my said daughter, Grace B. Simms, without leaving child or children her surviving, I direct my trustees to pay over the principal sum of said trust fund with accumulations of interest, to the trust fund created for the benefit of children of Robert J. Horner, Jr."

At the date of the decree, as at the death of the testator, Mrs. Simms had only one child, a daughter Gladys, an infant of tender years. The trust, however, was established for the benefit not only of the child then in being, but also of any other children that might thereafter be born to the mother. In so far as its duration is measured by the lives or minorities of persons not in being, its provisions are in plain conflict with the pro-

hibition of the statute. The only question is whether the share for the benefit of Gladys is capable of being severed from the shares for afterborn issue. We are confronted here by difficulties not present in the second trust, the one for the children of Mr. Horner. There the beneficiaries were determinate persons, four in number, named in the will. Here they are a fluctuating class to be determined in the future by the accidents of birth and death (*Bentinck* v. *Duke of Portland,* 7 Ch. D. 693, 698; *Webster* v. *Boddington,* 26 Beav. 136, 138; 1 Jarman on Wills [6th ed.], 239). We think the provisions for the benefit of afterborn children are so entangled with those for the benefit of Gladys as to make severance impossible. Let us suppose, for example, that two other children are born before the majority of Gladys and before the death of Mrs. Simms. What is then to be done with two-thirds of the income while Gladys is a minor? We may not pay the whole to her, for the will gives her but a part. We may not pay a third to each of the other children during the minority of Gladys, and then stop, for this would be to measure by *her* minority the portions that under the will are to be measured by theirs, a mutilation of the trust in the very essence of its plan. We may not continue the payments to the others after Gladys becomes of age or dies, for in so doing we shall be measuring the duration of the trust by lives not in being at the death of the testator. We may not drop from the trust a proportionate share of the principal as soon as another child is born, thus limiting the trust for Gladys upon each birth to a constantly diminishing share and adjudging intestacy as to the shares released, for the will gives no hint that such a severance was expected, but on the contrary tells us in effect that if afterborn children die without issue during minority, Gladys is again to have the income of the whole until she reaches her majority, and thereupon the principal, *i. e.,* the whole and not a part. The trust for the children of Mr.

Horner is so framed that it was possible to start at the death of the testator with four enumerated shares which, for their primary terms at least, were held upon lawful limitations, and ran against the statute only when later subdivided. The trust for the benefit of the children of Mrs. Simms gives us, not determinate shares, but shares in a state of flux, the provisions for the living child hopelessly commingled, indistinguishably fused, with those for the use of children to be born in the future (*Central Trust Co. of N. Y.* v. *Egleston,* 185 N. Y. 23, 31; *Leach* v. *Godwin,* 198 N. Y. 35; *Bailey* v. *Buffalo L., T. & S. D. Co.,* 213 N. Y. 525, 538; cf. 22 Halsbury Laws of England, Perpetuities, 696, and cases cited). We find no line of cleavage here which permits us to separate what is good from what is bad without destroying the testator's will, and making a new one of our own. It is of no moment that Gladys is even now the only child. The settled rule is that " in determining the validity of a trust and whether testamentary dispositions contravene the statute forbidding the suspension of the absolute ownership of personal property for more than two lives in being, we must consider not what has actually happened since the death of the testator, but what might have happened " (*Matter of Mount,* 185 N. Y. 162, 169; *Schettler* v. *Smith,* 41 N. Y. 328; *Haynes* v. *Sherman,* 117 N. Y. 433, 438; *Central Trust Co. of N. Y.* v. *Egleston, supra; Matter of Hitchcock,* 222 N. Y. 57, 71). A single organic plan had been conceived by the testator, a plan for the benefit of a fluctuating class (*Central Trust Co. of N. Y.* v. *Egleston, supra*). We extract the heart of this plan when we condemn its fluctuating element (cf. *Benedict* v. *Webb,* 98 N. Y. 460, 466; *Bentinck* v. *Duke of Portland; Webster* v. *Boddington, supra*). There is significance in the disposition to be made of the fund if no children are in being when the will shall take effect. In that event, the income is to go to Mrs. Simms during life, but not without conditions; it is to go to her " unless thereafter there should be

children of her blood." This is the dominant motive, never relaxed and unmistakably expressed. We feel its pulse in every line.

Our ruling in *Matter of Mount* (185 N. Y. 162, 169) is pressed upon us as decisive. That case went to the verge of permissible excision. It did not go so far as we shall have to go now if this trust is to be upheld. There the testator created a trust for life for the benefit of his sister, and directed that at the end of that estate the fund should be divided *per stirpes* into as many shares as there were children of his nephew then living and issue of deceased children, with separate trusts for each of them. We sustained this limitation for the benefit of the children alive at the testator's death, though we pronounced it void as to the others. The judgment went upon the ground that there was present in that will the precise element that is lacking in the trust for the children of Mrs. Simms, a direction for the severance of the shares, so that the good was not inextricably commingled with the bad (185 N. Y. at pp. 169, 170; cf. *Mount* v. *Mount*, 234 N. Y. 568; *Boughton* v. *James*, 1 Coll. 26; Gray, the Rule against Perpetuities, § 389). Here, as we have seen, the poison interpenetrates the system.

The question remains, since the daughter and the son, the only next of kin, acquiesce in the surrogate's decision, whether the decree is to be disturbed as to any one except the wife, the sole appellant in this court. The decree under review upholds the trust for Gladys during the term of her minority and no longer. Such a trust, thus limited, is not subject to the objection that it does violence to the public policy of the state. If that were its effect, the court might feel constrained to interfere, though the parties in interest were silent (*Carrier* v. *Carrier*, 226 N. Y. 114, 122, 123). The objection to the trust as declared by the decree is that it has been made over by the court, and the good separated from the bad,

to such an extent that it is no longer the trust declared by the testator. This, however, is an objection that the next of kin, who with the wife would take the fund if the trust were avoided altogether, are competent to waive so far as their own interests are concerned. They might declare such a trust themselves, and by the same token and to the same extent they may confirm and approve its declaration by the court (*Carrier* v. *Carrier, supra*). Wife and next of kin take under the Statute of Distributions as tenants in common, and not jointly. In such circumstances, a reversal of the judgment as to the wife who appeals does not affect the shares of others who have preferred to acquiesce (*St. John* v. *Andrews Institute,* 192 N. Y. 382; *Matter of Union Trust Co. of N. Y.,* 219 N. Y. 537).

We do not need to enter upon a discussion of the validity of the third trust, the one for Robert J. Horner, Jr. It shares the fate of the trust for the benefit of his children.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified by adjudging the invalidity as to the appellant of the trust for the benefit of the children of Grace B. Simms, and as so modified the order and decree should be affirmed, with costs to all parties separately appearing and filing briefs in this court, payable out of the estate.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Ordered accordingly.