JOHN SHERMAN HOYT, as Executor of and Trustee under the Last Will and Testament of HENRY R. HOYT, Deceased, Plaintiff, *v.* ALFRED O. HOYT, Individually and as Executor of and Trustee under the Last Will and Testament of HENRY R. HOYT, Deceased, and Others, Defendants.

Supreme Court, New York Special Term, May 26, 1925.

Wills — construction — will devises life estate to wife — on her death property was to be held in trust for benefit of children then surviving until they reached thirty-five years of age — in case any child predeceased wife, share was to be held in trust for surviving children of said child — said trust, as to grandchildren, is invalid as suspending power of alienation for more than two lives in being under **Real Property Law, § 42,** and **Personal Property Law, § 11** — invalid portion cannot be separated from valid — devise is valid to extent of life estate to wife.

A will which devises property in trust for the benefit of the wife of the testator during her life, with remainder in trust for the benefit of the children of the testator surviving the wife until they shall reach thirty-five years of age or, in case any child predeceases the wife then his or her share to be held in trust for the benefit of his or her children until they reach the age of thirty-five years, is invalid under section 42 of the Real Property Law and section 11 of the Personal Property Law on the ground that it suspends the power of alienation

for the period of more than two lives in being, since that part of the devise which provides for a trust to children of the testator's children who predeceased the wife, establishes a trust for persons who were not in being at the time the testator died.

The invalid provision relating to the grandchildren is so interwoven with the entire scheme of disposition of the property that it cannot be separated from the remainder and the remainder held valid.

The trust is invalid except as to the provision for the wife of the testator.

ACTION for construction of will.

*Daly, Hoyt & Mason* [*Charles K. Carpenter* of counsel], for the plaintiff.

*Webb & Patterson* [*Robert P. Patterson* and *Vanderbilt Webb* of counsel], for the defendants Emy O. Hoyt and others.

*Robert McC. Marsh,* guardian *ad litem,* for the defendant Henry R. Hoyt, Jr.

*Nathan Ottinger* [*George G. Bogert* of counsel], guardian *ad litem,* for the defendants Elliott Ruggles Corbett, 2nd, and another.

*John P. Cohalan,* guardian *ad litem,* for the defendants Helen Elizabeth Corbett and others.

LEVY, J.:

This is an application by the plaintiff, as one of the executors and trustees under the last will and testament of one Hoyt, deceased, for the construction of article 4 of that instrument. The jurisdiction of this court is invoked on the ground that doubts have arisen as to the validity of the several provisions in that article; that the father of certain infant defendants, alleged beneficiaries, has demanded an intermediate accounting, to which it is claimed he is not entitled on the ground that the clauses of the will as applying to said infants are void; and the aid of this court is thus sought to interpret the will and determine the true meaning and intent of the testator.

Henry R. Hoyt died on January 4, 1921, and left him surviving a widow, two married daughters, Margaret Corbett, now thirty-eight years of age, and Elizabeth Frothingham, now thirty-three; and two unmarried sons, Alfred, now thirty-two, and Henry, now twenty-one. Margaret has several children, four born before, and one after, the death of the testator; while Elizabeth has two children born before the latter's death and one born thereafter. The aforesaid grandchildren are all infants, and represented in this action by guardians *ad litem,* one such guardian representing the six living at the time of the testator's death, the other acting for the two afterborn grandchildren. These are all the heirs at law and next of kin interested in the determination of the issue.

The testator, by article 4 of his will, sought to create a trust for life for his widow, and after her death a further trust for his children and such issue of his deceased children, then living. The validity of these trusts is challenged, and the court must, therefore, construe the provisions of this article, which are as follows:

"*Fourth.* All the rest, residue and remainder of my estate, both real and personal, wherever situated, I give, devise and bequeath to my executors hereinafter named, *in trust nevertheless*, to collect and receive the interest, dividends, income, rents and profits thereof during the natural life of my wife, *and to pay and apply the entire net income thereof to the use of my said wife during her natural life; and upon the death of my wife, on the further trust to divide the principal of my estate into as many equal shares as there may be children of mine then surviving, or if any shall have died leaving a child or children him or her surviving, then such child or children shall take the share its or their parent would have been entitled to receive, as hereinafter provided; and to pay and apply* the entire net income from one of such shares to each of my said children, or to the child or children of any who may have died, such child or children to take the share its or their parent would have been entitled to receive and in equal shares if more than one, *until he or she shall attain the age of thirty-five years, and when each of my said children or grandchildren shall attain the age of thirty-five years, to pay over to him or her the share or prinicpal so held in trust for him or her*.

"Should any of my children die before my wife leaving a child or children him or her surviving, such child or children shall take the share of its or their parent and in equal shares if more than one, as hereinbefore provided.

"Should any of my children or grandchildren survive my wife and die before attaining the age of thirty-five years without leaving a child or children him or her surviving, the share or portion of such of my children or grandchildren so dying shall be immediately paid over and distributed among his or her surviving brothers or sisters.

"Should any of my children or grandchildren survive my wife and die before attaining the age of thirty-five years leaving a child or children him or her surviving, then the share or portion to which he or she would have been entitled if living shall be paid over and distributed to his or her children and in equal shares if more than one." (Italics mine.)

The executor who makes this application, and the four children of the testator as well, urge that the provisions and limitations of this article, except the trust for the life of the testator's widow,

Supreme Court, May, 1925.          [Vol. 125

should be declared void and of no effect, as they violate section 11 of the Personal Property Law, and section 42 of the Real Property Law, which prohibit, in the former instance, the suspension of the absolute ownership of personal property beyond two lives in being at the testator's death, and in the latter, the suspension of the power of alienation of real estate beyond two lives in being at the creation of the estate, subject to certain exceptions which do not apply here. The special guardians for the grandchildren endeavor to sustain the validity of the trust by interpretations, which I shall discuss hereafter.

The question raised in this proceeding involves a determination of these points: (a) Does the trust structure erected in the will violate in any part the statute against perpetuities? (b) If any part so contravenes it, can it be severed from the main body, without destroying the testamentary purpose?

To answer these, we must examine the primary intention of the testator in making the disposition of his estate. Not until the provisions are ascertained and understood, should their legality be determined. (*Central Trust Co.* v. *Egleston*, 185 N. Y. 23, 29.) The testator's plan of disposition was comparatively simple. He had a wife and children and some grandchildren. He was aware that one or more of his children might die before his wife would pass away, leaving children. It was his dominant purpose that his wife, if she survived him, should have the whole usufruct of his residuary estate during her life. After that he wanted his children and grandchildren to have it. Grandchildren he left to their respective parent's bounty, if such parent should be living at the widow's death; but if the parent should be dead, he intended these grandchildren as a class to stand in their parent's shoes. There is no evidence of an intent to discriminate between grandchildren born before and those born after the testator's death. On the contrary, the direction to divide the estate after the widow's death into as many equal shares as there were children *then surviving* indicates the fixed purpose to include such afterborn grandchildren. As he had made a measure of provision for his children during his lifetime, he evinced an intention to postpone their absolute title to the additional property, after the death of his widow, until such time as they, or, in the event of their prior death, their children surviving them, should reach the relatively mature age of thirty-five.

There is no room for doubt that if the testator had eliminated from his trust scheme any direct or indirect provision for grandchildren born after his death, the entire plan would have been substantially valid. In that case alienation would have been

suspended for only two lives in being; as the contingent trust, which provided that in the event of the death of any child without issue, before receiving possession of its share, such share should go to the surviving children, constituted such a minor element in the testator's general plan as to be capable of elimination, under the rule laid down in *Matter of Trevor* (239 N. Y. 6). But the will went further, and included in the trust structure grandchildren not in being at the time of his death. There are two such grandchildren now, and the possibility of several more; and if the parent of these should die before the widow, a trust would spring up for the benefit of grandchildren not in being at the time of the death of the testator. Thus a trust would arise, not limited in duration to but two lives in being, and, therefore, void under both the Personal and Real Property Law, in the latter case the suspension of the power of alienation beyond two lives in being extending not over a mere legal minority but over a span of thirty-five years.

The guardian *ad litem* representing the infant grandchildren living at the time of their grandfather's death, urges an alternative construction which would remove the stamp of illegality from the plan. It was the testator's intention, he argues, to give to his wife the income for life of all his estate, with remainder over to his children or grandchildren her surviving, limiting the enjoyment of the possession of the principal by the children or grandchildren to such time as they attained the age of thirty-five years. Such an interpretation, however, is utterly repugnant to the express language of the will. The trustees were directed to pay and apply the entire net income to the use of the testator's wife, and upon her death, " *on the further trust* to divide the principal of my estate into as many equal shares as there may be children of mine then surviving * * * and to pay and apply the entire net income from one of such shares to each of my said children * * * until he or she shall attain the age of thirty-five years * * * (then) * * * to pay over to him or her the share or *principal so held in trust for him or her.*" The two italicized phrases clearly indicate that the trust was to continue after the death of the widow, and that the children did not obtain a vested remainder upon the death of the testator. As is clearly pointed out in *Lewisohn* v. *Henry* (179 N. Y. 352, 361, 362) in language particularly applicable here: " If a share vested in each child upon the death of the testator, it was subject to alienation at the will of the owner, for a vested right is alienable and may be assigned. Whatever one owns he may sell, even if the date of full possession and enjoyment is not due * * *. No part of the capital was to go to the children until the time fixed for absolute transfer to them should arrive. The

direct gift to the executors and the absence of any gift of capital to the children in the first instance, show that there was no intent to vest title in them prior to the date named for distribution. The gift of capital to the children·was through the direction to convey, and there was no vesting until the time to convey came around."

Since the children had no vested remainder, the grandchildren could have no remainder contingent on their respective parents predeceasing the widow or dying before attaining the age of thirty-five. The only conclusion we can, therefore, reach is that the will is incapable of the construction contended for by the guardian, and that the testator attempted to create an invalid trust extending beyond two lives in being.

But an important question remaining to be disposed of is, must the whole scheme, after the provision for the widow, fail, or may the invalid features in article 4 be separated from the other trust provisions, that is, may the line of cleavage be drawn between grandchildren born before the testator's death and those born subsequently thereto? It has been repeatedly held that trust provisions which are bad may be separated from those which are good, but in accomplishing this result, the courts have insisted that the intent of the testator should not be defeated. (*Matter of Hitchcock,* 222 N. Y. 57.) In other words, if by drawing a knife between the good and the bad trusts, violence to the organic plan of the testator would result, this dissection should not be permitted and the whole should be declared void.

An illustration of a permissible separation resulting in the preservation of the body of the trust scheme is found in *Matter of Mount* (185 N. Y. 162). There the testatrix left an income for life for the benefit of her sister, and after the latter's death, one share for each child of her nephew or the issue of such child *per stirpes.* Specific provision was made for separate shares, with special designations for each trust fund and the keeping of separate accounts for each such fund. In view of the possibility of the birth of further issue of the nephew after the death of the testatrix, the plan seemed to offend the Statute against Perpetuities. But the court sustained the trust plan in so far as it provided for the benefit of the nephew's children living at the death of the testatrix, and pronounced it void as to the afterborn issue. The distinct reason for this disposition of the matter was that the dominant aim of the testatrix was the creation of a plurality of trusts, in view of her definite and expressed purpose to keep separate the trusts for the respective beneficiaries. But in referring to this solution of the problem, Judge CARDOZO said, in *Matter of Horner*

(237 N. Y. 489, 503), that the court " went to the verge of permissible excision."

In *Matter of Trevor* (*supra*), very recently decided, the testator set aside a part of his estate for the benefit of his wife, and upon her death for the benefit of her three children, to be disposed of by adding the same in equal parts to the shares of the residuary estate passing to such children under another provision of the will which directed that the residuum be divided into four equal parts to represent his four children, one by a former wife and three by the one referred to in the will, and to invest the same and apply the income to the support of each child during minority, and pay the principal to each in installments, the first of which was payable upon each child's reaching the age of twenty-three. He further provided that in the event of the death of any child before receiving its share in full, such share was to vest in the issue of said child, the principal to be paid to the latter upon its attaining majority. *In the event of the death of any child without issue its share was directed to be added in equal shares to those of the surviving child or children.* The last provision, italicized here, caused the conflict with the statute, because on the death of any child without issue, its share in the trust fund was to be added to the share of the survivors. This possibility involved a contingent continuation of the trust. The share of a child might be augmented as a result of the death of any of the others and merged in the trust, thus resulting in the suspension of absolute ownership " (a) during the life of the widow, (b) during the life of a child, and (c) during two lives more." The court held that this contingent increment to valid trusts should not be permitted to defeat the clear purpose of the testator, and cited (p. 16) from *Matter of Horner* (*supra*, 495) as follows: " The provision that in given circumstances a share shall fall back into the general body of the trust and remain unsevered from the bulk is so subordinate in importance and so separable in function that we are at liberty to cut it off and preserve what goes before."

This decision to preserve what was good, was practically as well as legally sound. The possible augmentation of a valid share by something invalid should not taint the resulting whole; the increment should not be regarded as a cancer, the removal of which would destroy the life of the trust organism. It is rather " an epidermal callosity which may be harmlessly eliminated." (*Matter of Trevor, supra*, 18.)

In the light of this, the latest pronouncement of the Court of Appeals on the subject, we may endeavor to construe the will here considered, with a view to the possibility of severing the illegal portions in order to save the rest. Obviously, the illegal part of the

trust results from the provision for the afterborn grandchildren. Their guardian suggests that full effect can be given to the testator's intention by construing the interest of his wards to vest immediately after the second life, instead of deferring such vesting until they arrive at the age of thirty-five. But this would be nothing less than rewriting the will for the purpose of evading the application of the statute, and this we cannot do. If the provision for the children and their issue regardless of when born, were valid, the invalid clause for adding the share of a grandchild dying without issue before the age of thirty-five and after the death of the widow, to the share of the brothers and sisters surviving, could be severed from the valid trusts for the other children. The analogy with the *Trevor* situation would then be complete. But there is no such clear line of demarcation in the will under consideration here, except at the termination of the widow's life estate.

The line of cleavage which would cut off the afterborn grandchildren would so mutilate the testamentary scheme as to make it unrecognizable. This statement may seem surprising in view of the fact that there are only two afterborn grandchildren who would be affected. But as the surviving children are still comparatively young, a material increase in the number of afterborn issue is within the realm of strong probability. The destructive effect of this upon the dominant aim of the testator will be illustrated later.

*Matter of Horner* (*supra*) is decisive authority for the construction adopted here, by reason of the similarity of circumstances. There the testator left a part of his estate to his daughter for life and thereafter for her children during minority. Only one such child was living at the death of the testator, but the possibility of afterborn children created a fluctuating class to be determined in the future by the accidents of birth and death. The court held that the trust was established for the benefit not only of the child in being, but also of any other children that might thereafter be born. The conclusion reached, therefore, was that in so far as the duration of the trust was measured by the lives or minorities of persons not in being, its provisions were in plain conflict with the prohibition of the statute. The severance of the provision for afterborn children was refused, because of the impossibility of doing this without mutilation of the trust in the very essence of the testamentary plan. " A single organic plan had been conceived by the testator, a plan for the benefit of a fluctuating class. * * * We extract the heart of this plan when we condemn its fluctuating element * * *." (*Matter of Horner, supra,* 502.)

Precisely the same situation obtains in the case at bar. The

illegal provision for the fluctuating class of afterborn grandchildren cannot be severed without destroying the organic unity of the entire plan. I shall follow the method of the Court of Appeals in the last case in concretely illustrating the effect of such severance, by using similar examples, which will unquestionably establish the resulting injustice and inequality.

Consider what would be the situation in case one of the children should predecease the widow, leaving no issue, except children born after the testator's death. The provision for such issue would unquestionably be invalid, and as to that fourth of the estate, the testator would be deemed to have died intestate. That fourth would accordingly pass as by intestacy to his heirs and next of kin, namely, in this assumed instance, to his three other children and the issue of the deceased child, with the result that the latter as a group would have only one-fourth of one-fourth, or one-sixteenth, of their grandfather's estate, while the other branches of the family entitled to take would each receive five-sixteenths. So, if two of the testator's children, for example, Alfred and Henry R., Jr., who are now unmarried, should die, before their mother, leaving children, the latter would receive each two-sixteenths, while the families of Margaret and Elizabeth would each receive six-sixteenths. Again, if the latter two should die before their mother, their youngest children would take nothing under the will, because born after their grandfather's death; but their elder brothers and sisters, in addition to their own shares, would divide with them the trifling fraction which would descend through intestacy.

The rejection of the entire plan, except the trust provision for the widow, approximates most nearly the testator's intention, for it results in equal distribution of the testator's estate among his children as by intestacy, and gives the latter the opportunity of adequately providing for their own children out of their bounty.

Furthermore, under the peculiar circumstances existing here the intention of the testator would be carried out with a surprising degree of exactness. Three of the four children are already about thirty-five years of age or over, and would, therefore, if the will were sustained and they survived their mother, take absolutely, instead of in trust. This weakens the force of the argument by the guardians that the declaration of invalidity would defeat the object of the testator to defer his children's right of enjoyment of the property until they reached the age of thirty-five. Each child will, therefore, be in position to take care of his or her issue out of the inheritance. On the other hand, if the afterborn children should be ignored in order to bring the trusts within the letter of the law, not only would the opportunity for provident care by the

parents for their offspring be eliminated, but in case the two sons married and predeceased their mother leaving issue, their children would get absolutely nothing under the will; whereas, under the declaration of intestacy, they would be entitled to share in the vested remainder of their respective parents.

Finally, an additional observation set in motion by one of the guardians should be noted, not alone to show its utter futility, but to dispose of the question it raises as to the nature of the property in remainder, the testator's disposition of which has wholly failed. It is urged that in view of the power of sale of the real property in the executors by the terms of the will, an equitable conversion has arisen *ipso facto*, and for this reason there is at no time any suspension of the power of alienation as to the realty. The difficulty with this contention, even if it were sound, is that the language of the will does not countenance the assumption that the testator intended an equitable conversion of his realty. No such purpose is revealed in the instrument. The power of sale is purely discretionary. If anything, the intent, as shown by the authority given to the executors to lease and mortgage, is not to cause this power to be invoked, unless necessary. But a more important reason for taking note of this argument is because it presents the issue as to the status of the realty upon the death of the widow. If the executors, whose authority under the will remains intact during the existence of the life interest in the widow, notwithstanding the invalidity of a part of the will, exercise the power of sale and turn the realty into money in fact, the fund, for purposes of disposition under the statute as intestate property, will retain its character as real estate. (*Jones* v. *Kelly*, 170 N. Y. 401, 408.) All the realty, the substitute cash for whatever has been sold, as well as the property remaining unchanged, will at the death of the widow, descend to the heirs at law under the Statute of Descent, while the personal property will pass under the Statute of Distribution. And the persons to take the same are those who are the testator's next of kin and heirs at law at the time of his death, and not those who may happen to occupy that relationship at the termination of the precedent estate. (*Clark* v. *Cammann*, 160 N. Y. 315.)

My conclusion, therefore, is that the disposition of the testator as to the life interest of the widow is valid, but as to the remainder beyond such life interest, disposed of in paragraph 4 of the will, I rule that he died intestate.

Submit findings and decree in conformity herewith.