S. Samuel Di Falco, S.
The accounting trustee requests the court to construe the will in several respects in relation to the trust or trusts created for the grandchildren of the testatrix. The first and fundamental question is whether the testatrix intended to benefit only such grandchildren as were living at the time of her death, or whether she intended later born grandchildren to participate in the fund, and if the latter represents her purpose, within what limitations can the class of beneficiaries increase in membership1? If only those living at the time of her death are the intended beneficiaries, then the two children of her daughter are the only persons having any possible interest in the trust fund. If later born grandchildren were intended to benefit, then the two children of the son will share with the other two grandchildren, and possibly others not yet born may be added to the group. Other questions of construction will depend to some extent on how this primary question is resolved.
The testatrix was survived by her husband, her son Jerome, her daughter Marcia P. Powers, and the latter’s two children. In her will the testatrix gave specific and general legacies and she then directed that the residue of her estate be divided in four equal parts. One part was bequeathed outright to the son and one part to the daughter. Paragraphs A and B of *236 article Fifth of the will dispose of the outright residuary legacies and occasion no difficulty. The remaining paragraphs of article Fifth contain the seeds of the present controversy and read as follows:
“ C. Regarding the remaining 2 parts constituting 50% of my residuary estate, it is my intention and desire that this shall ),e divided equally per stirpes among the issue of my beloved son, Jerome R. Pergament, and my beloved daughter, Marcia P. Powers, in trust, as follows.
“ D. I give, devise and bequeath the remaining 2 parts constituting 50% of my residuary estate to the Public National Bank and Trust Company of New York as Trustee, and Jerome R. Pergament as Co-Trustee, and in the event that Jerome cannot serve that Seymour R. Powers shall serve as Co-Trustee in his stead, in trust nevertheless to collect and receive the income thereof and re-invest for the benefit of the issue of Jerome R. Pergament and the issue of Marcia P. Powers into equal shares per stirpes. That the corpus of the Trust and all accumulations shall be held for distribution to those of the male sex who shall receive one-third (%) of his share at the age of 25 and the remainder at the age of 30, while those of the female sex shall receive one-half ("%) of her share at the age of 21 and the remainder at the age of 27.
“ F. The Trustee and Co-Trustee shall have the power and authority to pay to any one of the beneficiaries at any time during the life of the Trust whatever sum or sums they deem necessary, not exceeding the beneficiaries share, to provide in case of emergency such as for health, for schooling, or for marriage.
“ F. In the event that any one of the beneficiaries dies or predeceases before final distribution of his or her share, such sum or sums shall be apportioned in equal shares to the surviving grandchildren. ’ ’
The parties have stipulated certain background information. The testatrix had been suffering distress for a period of approximately one year, had sought diagnosis at a well-known clinic, and on the very day that she executed her will she entered a hospital for an exploratory operation. She died within nine months of that time. When she made her will, Jerome Pergament was in his 31st year and Marcia Powers was 27 years old. Jerome had been married, divorced and remarried. The testatrix knew that Jerome was experiencing difficulties with his second wife. He then had no children. Marcia Powers had two children, one born in August, 1941 and the other in July, 1946. The testatrix was 52 years of age, and there is no evidence that she knew the nature of her illness or its gravity.
*237 The decedent executed a codicil to her will in October, 1949. The codicil has no significance in the present controversy.
There is no direct evidence relating to the preparation or draftsmanship of this will. No attorney was present at its execution. Only the decedent’s husband and the three subscribing witnesses were in her apartment when she signed it. This extrinsic evidence affords no basis for a finding that the will was in fact prepared without legal assistance, but intrinsically the will itself bears strong witness to that fact.
Jerome Pergament was later divorced, and he married a third time after his mother’s death. Two children have been born of this marriage, and they are represented here by a special guardian. The two children of Marcia Powers are represented by their general guardian. The husband of the testatrix is dead and his executors have appeared in this proceeding. Each party offers a different construction of the will, each construction favoring, as might be expected, the interests of the one proposing it. The general guardian of the Powers infants contends that only his two wards are beneficiaries of the trust and that no grandchild born after the decedent’s death can have any interest in the fund. The special guardian of the other infants would construe the will as benefiting all grandchildren born during the lives of the decedent’s two children. The executors of the deceased husband believe that the testatrix intended to benefit later born grandchildren, that the trust is invalid in its entirety and that the fund is distributable as in intestacy.
We are told that the result is preordained by one canon of construction or another that the court is bound to apply to this will. Canons of construction, however, are designed to assist in the search for testamentary intent and are not applied when the result would be contrary to the intention which is revealed by the terms of the will, read in the light of the surrounding circumstances. We must, therefore, first look to the will itself to find out how much of the testamentary plan is revealed in its text.
Paragraphs A and B of article Fifth, which contain the outright bequests to the son and daughter, are significant only as they contribute to the outlines of the testamentary plan. A gift of specific stock to the son was eliminated by the codicil. Otherwise, these two paragraphs may be characterized as completely parallel, representing in all respects equality of treatment of son and daughter. The alternative beneficiaries in each case where the primary legatee should fail to survive the decedent are, first, the issue of that legatee, or if there be none, then the *238 other child of the testatrix, or if neither should survive, then the issue of the alternative legatee. The text of the two paragraphs is substantially identical with respect to certain alternative trusts. In each paragraph two different trusts are provided under contingencies which have not occurred. In each paragraph no term at all is prescribed for one trust and a flat term of ten years is fixed for the other. There is no explanation for the repetition of the omission in the one case or the invalid term in the other, except that in preserving equality between the two, one was obviously copied from the other.
In paragraph C, the testatrix has stated explicitly her ‘£ intention and desire that this [fund] shall be divided equally per stirpes among the issue of my beloved son, Jerome B. Pergament, and my beloved daughter, Marcia P. Powers, in trust, as follows ”. Once again we have a clearly expressed purpose to preserve absolute equality between the two lines of descent. At the time these words were written, Jerome had no child and his second matrimonial venture was at the point of foundering. The words which relate to the issue of Jerome are so plain that even in a will where terms have been used so heedlessly, we cannot doubt that the testatrix comprehended them. At this point in the will we, therefore, have a gift to a class whose membership is to be fixed at some future time. If we consider only the words in and of themselves, there is a designation in such unrestricted terms that, interpreted literally, they include all persons who will fit into those descriptive words at any future time. (3 Powell on Beal Property, p. 140; Bestatement, Property, § 295, comment [a], p. 1580.) We must read the terms in their context, however, and we must measure their breadth within the framework of the testamentary plan and in harmony with the principles of testamentary construction.
Paragraph D of the will clearly reveals the purpose to postpone distribution of the class gift for an extended period of time. The intention of the testatrix was to preserve the fund intact until her grandchildren reached the age where she deemed it prudent to entrust them with the money, unless they should be in need of it earlier. All parties recognize that the testatrix has unlawfully directed the accumulation of the income of the fund (see Personal Property Law, § 16). Although the trustees are clothed with a certain discretion, no payment of either principal or interest is commanded until the oldest grandchild shall reach the age of 25 years. At the time she made her will, the elder of the two living grandchildren had not yet reached the age of 8 years. Thus more than 17 years must *239 elapse between the date of the will and the first regular distribution of principal. Even at that time the first-born grandchild would take only one third of his share.
In paragraph F, the testatrix explicitly stated that no grandchild shall be vested indefeasibly with any interest in the fund until it is distributed to him. The death of any beneficiary “ before final distribution of his or her share ” deprives him of any further interest in the fund. His share is to “ be apportioned ” equally among the survivors. We thus have a further sign of an intention that class membership is not to be fixed finally until the time for distribution arrives.
It seems to the court that the limitation of the trust benefits to only such grandchildren as were living at the death of the testatrix would be out of harmony with everything written in her will. The question that immediately suggests itself is that if she did not intend so to limit the class of possible beneficiaries, what other limitation could she have had in mind. Perhaps in point of fact she had none at all. If she had taken thought of the matter, she would have realized that it would be theoretically possible for a grandchild to be born after the fund had been completely disbursed to the theretofore living grandchildren. In a practical sense, however, it is most probable that the first mandatory distribution of funds would reveal the full extent of the interests of all grandchildren. A skilled draftsman would not have ignored the possibility of complications in this situation. However, even experienced draftsmen frequently fail to explore all reasonable possibilities of class membership. We may fairly assume that this testatrix was thinking in terms of practical probabilities rather than theoretical possibilities. The birth of a child to the son or to the daughter after the time that the eldest boy in that family reached the age of 25 years happens so relatively infrequently that we are justified in assuming that this testatrix had expected the class membership to have become closed by that time. (Restatement, Property, § 295, comment [a], p. 1581.)
Resort to the established canons of construction confirm the gift to a class whose membership has not yet closed. The general guardian asserts that the rule of construction in a case such as this is that the outermost limits of the class described by the maker of the will are to be fixed at the time that the will becomes effective, that is, the day of her death. Most of the authorities cited by the special guardian relate to class gifts phrased in terms of “ heirs “ next of kin ” and similar expressions. Such limitations are in a category by themselves because they usually import reference to some *240 statute which fixes both the members of the class and the size of their respective shares (3 Powell on Real Property, p. 82; 3 Page on Wills, §§ 1054r-1056; Casner, Increase in the Class Membership, 51 Harv. L. Rev. 254, 259.) Those limitations have their own rules of construction.
Professor Casner states it to be the general rule of construction with respect to the increase in class membership, “that the class will increase in size until the period of distribution but not after that time ”. (51 Harv. L. Rev., supra, p. 260.) This succinct statement of the rule is fully supported by the authorities. A distinction has always been drawn between limitations which create an immediate gift and those which create a postponed gift (Restatement, Property, §§ 294, 295; Matter of Smith, 131 N. Y. 239, 247; Matter of Koch, 282 N. Y. 462). When a gift to the class is an immediate gift, that is, when the subject matter of the gift is available for immediate distribution, it is presumed that the testator intended the distribution on the date that his will becomes effective, or as soon as is reasonably possible thereafter. When the gift to the class is a postponed gift, the rule in respect of class membership is not fundamentally different, although it does lead to a different date for closing the membership. ‘ ‘ The basic idea * * * is the same, namely, that as soon as the subject matter of the disposition could be distributed but for the possibility of further members of the class, considerations of convenience demand that the ability of the class to increase in membership shall cease and that distribution shall then occur. In the case of an immediate gift the critical date is the moment at which the conveyance containing the limitation speaks, but in a postponed gift to a class the critical date is the termination of the postponement caused by the limitation. ’ ’ (3 Powell on Real Property, p. 147.)
A gift to the testator’s own children would present no practical problem because the class is in fact determined at the time of his own death. A gift to the children of another person raises real questions of construction. To meet these problems, the courts have formulated rules which attempt to give effect to the probable intention of the testator, to the public interest in the prompt settlement of estates and to the necessities of the situation. (Casner, Increase in the Class Membership, supra, p. 257; Powell on Real Property, supra, pp. 140, 148; Restatement, Property, p. 1580.)
In a postponed gift to a class, distributable in part as each member attains a specified age, the rule is that ‘1 until some one of the group attains the stated age the class retains the ability *241 to increase in membership. But after one person has attained the stated age no further increase can occur.” (Restatement, Property, § 295, comment [j]; 3 Powell on Real Property, supra, pp. 153-154; Casner, Increase in the Class Membership, supra, p. 287; 3 Page on Wills, supra, p. 239.) That rule is recognized as a rule of convenience and necessity. However, it is thought also to express the probable intention of the testator.
This view of the ability of the class to increase in membership until the time of distribution was long ago expressed as the governing rule in this State. In Tucker v. Bishop (16 N. Y. 402, 404) the Court of Appeals said: ‘ ‘ As a general rule, a will of personal estate speaks as of the time of the testator’s death. Where a bequest is to a class of individuals, in general terms, as ‘ to the children of A,’ and no period is fixed for the distribution of the legacy, the time for distribution will be the death of the testator; and hence only children born or begotten prior to and in esse at that time will be entitled to share in the distribution. But where the distribution is, by the terms of the will, to be made at some time subsequent to the death of the testator, the gift will embrace not only all children living at the death of the testator, but also all those who shall subsequently come into existence before the period of distribution; and if the bequest is a present bequest, the beneficiaries who are in esse at the death of the testator will take vested interests in the fund, but subject to open and let in after-born children, who shall come into being and belong to the class at the time appointed for the distribution. Where the period of distribution is postponed until the attainment of a given age by the children, the gift will apply only to those who are living at the death of the testator, and who shall have come into existence before the first child attains the age named, being the period when the fund is first distributable in respect to any one object or member of the class.”
In Stevenson v. Lesley (70 N. Y. 512) the residue of the estate was bequeathed to trustees ‘ ‘ in trust for my grandchildren, namely, the children of my son Alexander M. Lesley, and the survivors of them share and share alike, and the children of my daughter Ellen J. Stevenson, deceased, and the survivors of them share and share alike, to be paid and conveyed to each of said children, respectively, as they each become of age, in equal shares ”. The number of children of the daughter was, of course, fixed at the testator’s death. One child was later born to the son. The court said: ‘ ‘ The devise here being to a class to take effect in enjoyment at a future *242 timé, the child of Alexander M. Lesley, born subsequent to the death of the testator, and before the time for the distribution of any part of the corpus of the estate has arrived, is entitled to a share therein.” (P. 517.)
A different result was reached in Matter of Wolf (140 Misc. 595) but it was shaped largely by the view which the court took of the vesting of the interest (p. 596). That result is not in accord with the “ better reasoned opinions ” (Casner, Increase in the Class Membership, supra, p. 288, note 94).
The rule of construction which we have been discussing evolved, as stated hereinabove, from the interplay of several conflicting considerations. It is argued that a still different factor that must be taken into account is the Rule against Per-petuities and that it is so powerful a determinant that a completely different construction of the will will result. We are reminded that there can be no possible infringement of the Rule against Perpetuities if the class is confined to the two grandchildren who were in being at the death of the testatrix, but that invalidity must necessarily result if the absolute ownership of the personal property is suspended for the lives of persons not in being at her death (Personal Property Law, § 11). It is, of course, an established rule of construction that in an instrument where “ either of two constructions is possible, one of which would be valid and the other invalid, the former will be preferred because it is presumed to accord with the actual intention. ’ ’ (Seitz v. Faversham, 205 N. Y. 197, 202-203.) A prerequisite to the application of that principle of construction is such an ambiguity in the text as to support either of two interpretations, although it has been said that a construction in favor of validity is sometimes chosen “ even to the extent of a warping of words which cannot be described otherwise than as violent.” (Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev., 638, 658.) “ One starts with the inference that the testator * * * intended to do a legal act rather than an illegal one, and one permits this basic intention to overcome inferences as to minor intentions, which would ordinarily be drawn from particular words, unless those words are clear.” {Id, p. 658.)
Giving to the rule its widest application within the limits of this will, it is not sufficient to cause the disinheritance of all but two of the grandchildren. In the first place, the intent to preserve equality between the two branches of the family is so clearly expressed that an interpretation favoring only one of them is out of harmony with everything written in the will. Not only did the testatrix fail to qualify the term “ issue ” by *243 such words as would restrict the gift to those living at her death, but all of the surrounding circumstances make it reasonably certain that she had no such restriction in mind. The testatrix could not have been wholly oblivious to the possibility of her will becoming effective at a very early date. She knew that her son then had no issue; she was aware of his matrimonial difficulties; she must have recognized that he would be unlikely to have children in the near future. She created a trust in which income was to be accumulated and all payments deferred to a future time. To say that the ‘ ‘ intention and desire ”, explicitly set forth in her will, to divide the fund “ equally per stirpes among the issue of my beloved son * * * and my beloved daughter ”, was intended to mean only such issue as would be living at the time of her death, is to read into the will qualifying words which neither the text of the will nor the surrounding circumstances will support. We can justify that kind of construction only on the premise that this testatrix intended above all else to make a disposition that was legally valid. To attribute to this testatrix an overriding intention of making only valid dispositions, would be sheer nonsense. In paragraphs A and B of this same article, she planned trusts that plainly offend the statute. In each case, without regard to the age of the beneficiaries, or their number, she measured the trust term by a flat period of years. She was patently not aware of any obligation to postpone ownership for only a limited number of lives. She was equally oblivious of the statutory restriction on the accumulation of income. It would be wholly unrealistic to say that a meaning otherwise unsupported in the will can be predicated on the assumption that this testatrix intended to conform to our statutes.
The applicable canons of construction point to a conclusion that is completely in harmony with the text of the will, the general testamentary plan and the background against which the will is to be read. The testatrix has directed that the fund be held until the grandchildren shall respectively attain certain ages and that each grandchild shall receive his share in installments at specified ages. Grandchildren born after the death of the testatrix are entitled to participate in the fund except that no grandchild born after the time of the first distribution of the fund shall be entitled to share in that fund.
The question presented by the petition is whether trusts so constituted are invalid in whole or in part. The special guardian of the later born grandchildren argues that the trust term is measured by the lives of the son and daughter of the testatrix. That is not, however, what the will directs. The lives of the *244 children do not measure in any way the term of the trust or trusts. It may happen that all of the funds are distributed before either of them should die. On the other hand, both of the children may die and yet none of the moneys may have been disbursed to beneficiaries up to that time. The term of the children’s lives has nothing to do with the term of the trust.
Even if we conceive of the fund as divided in two shares, one for the issue of the son and one for the issue of the daughter, it is clear that the ownership of both funds may be suspended during the lives of persons not in being at the death of the testatrix. Insofar as the shares held for the benefit of the son’s issue are concerned, the violation of the statute is obvious to all. In respect of the daughter’s issue, she has now only two children, both of whom were living at the date of death of the testatrix. It is of mo consequence, however, that these are now the only children. ‘ ‘ The settled rule is that ‘ in determining the validity of a trust and whether testamentary dispositions contravene the statute forbidding the suspension of the absolute ownership of personal property for more than two lives in being, we must consider not what has actually happened since the death of the testator, but what might have happened ’ * * *. A single organic plan had been conceived by the testator, a plan for the benefit of a fluctuating class * * *. We extract the heart of this plan when we condemn its fluctuating element”. (Matter of Horner, 237 N. Y. 489, 502.) The testatrix has said that the trust is for the benefit of the issue of the daughter. The class comprehends those living when the will was made and any born thereafter during the trust term. Any apportionment of the trust fund between the two living children could be only tentative because any children later born to the daughter would have the right to participate in the fund and a new adjustment would have to be made as and if each new child were born. (Matter of Horner, supra, p. 501.) There is thus a gift to “ a fluctuating class to be determined in the future by the accidents of birth and death ”, the provisions for those who may be born hereafter are so entangled with those for the benefit of issue now living “ as to make severance impossible”. (Matter of Horner, supra, p. 501.)
The result is that the trust must fail in its entirety. Invalidity of the whole trust will probably come closer to the plan of the testatrix than will any salvage of portions of the trust, for at least a virtual equality as between the two branches of the family will be preserved. The corpus of the trust must be distributed as intestate property.
Submit decree on notice construing the will accordingly.